**Loida FLORES et al., Plaintiffs,**

**v.**

**Edwin YESKA and Caroline Yeska, Defendants.**

**Civ. A. No. 72–C–588.**

United States District Court, E. D. Wisconsin.

March 8, 1974.

Ness Flores and John F. Ebbott, Milwaukee, Wis., for plaintiffs.

John A. Kluwin, Milwaukee, Wis., for defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

REYNOLDS, Chief Judge:

This is a civil action for declaratory and injunctive relief and, in addition, for compensatory and punitive damages, in which action plaintiffs allege that they have been denied the right of access to an agricultural labor camp and to migrant workers. Jurisdiction is claimed under 28 U.S.C. § 1343(1) and 42 U.S.C. § 1985(3).

The cause of action arises out of an incident in which plaintiffs were physically prevented by the defendants from speaking and meeting with several migrant residents of the defendants' labor camp. Plaintiffs allege that as a result of this incident, defendants have deprived them of their constitutional rights of free speech, association, and assembly as guaranteed by the first and fourteenth amendments to the United States Constitution.

This matter is before the court on defendants' motion to dismiss this action for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. The motion to dismiss is granted.

The following facts have been alleged in the complaint. Plaintiff Loida Flores was employed during the summer of 1972 as an "Outreach Worker" by United Migrant Opportunity Services, Inc. (hereinafter "UMOS"). Plaintiff Robert Sattler was employed at the same time by United Migrants for Opportunity, Inc., and was assigned to the Legal Services Department of UMOS. UMOS is a nonprofit corporation organized under the laws of the State of Wisconsin. Its operations are financed by a grant from the Office of Economic Opportunity and, consequently, are governed by the terms and conditions of that grant. Among its functions, UMOS provides social services to residents of agricultural labor camps, located in Wisconsin. In addition to assistance given migrant farmworkers and their families to meet immediate needs, UMOS assists migrants in their efforts to get out of the migrant stream by providing programs of adult basic education, cooperative vocational training, job placement, and housing and relocation assistance.

The defendants Edwin Yeska and Caroline Yeska are the owners and operators of an agricultural labor camp located on Rural Route 1, Wild Rose, Wisconsin. The camp has approximately four or five cabins and is located near the Yeska's home. There is only one entrance and exit, a driveway which is used by the Yeskas to gain entry to their home.

The incident in question occurred on or about July 27, 1972, sometime in the afternoon. At that time the plaintiffs Flores and Sattler, in the normal course of their duties, tried to visit the migrant residents of the Yeska labor camp. They gained access to the camp and began speaking to several of the migrant residents. Immediately thereafter the defendant Edwin Yeska arrived on the scene and began to implore the migrants not to speak to the plaintiffs. He also allegedly called the plaintiffs troublemakers and repeatedly ordered them to leave his land. Plaintiffs allege in their complaint that at this time Edwin Yeska was joined by his wife, Caroline Yeska, who also repeatedly made slurring and abusive remarks about the plaintiffs. At one point Edwin Yeska threatened physical violence if plaintiffs did not immediately leave the camp. It is also alleged that he ultimately did grab the plaintiff Flores by the shoulders, pinned her against her automobile, and swung and struck her left shoulder with his fist. Defendant Edwin Yeska was vocally supported by his wife who continued to direct verbal threats at the plaintiffs.

The plaintiffs further allege that they stood their ground and continued to maintain their legal rights to be on the premises. Subsequently the defendant Edwin Yeska again grabbed the plaintiff Flores, pushed her against the automobile, and further abused her by threatening more acts of violence against her person. The sum total of defendants' actions caused the plaintiffs to finally yield and leave the camp. Since this matter is before the court on a Rule 12(b)(6) motion, "[f]or the purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted * * *." 2A Moore's Federal Practice ¶ 12.08, at 2266–2267 (2d ed. 1974).

■ Defendant Edwin Yeska has submitted an affidavit to the court. Rule 12(b) of the Federal Rules of Civil Procedure states in pertinent part:

"* * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Nevertheless, when matters outside the pleadings are submitted in connection with a motion to dismiss for failure to state a claim, the court should disregard these matters and decide the motion on the pleadings. Grand Opera Co. v. Twentieth Century—Fox Film Corp., 235 F.2d 303 (7th Cir. 1956); Temp-Resisto Corp. v. Glatt, 18 F.R.D. 148 (D.N.J.1955). For the instant, therefore, said defendant's affidavit shall be disregarded and the matter before the court shall not be treated as a motion for summary judgment.

Statutory jurisdiction without reference to the amount in controversy is contained in 28 U.S.C. § 1343(1) which provides the district courts with original jurisdiction over any civil action commenced by any individual "[t]o recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;". Section 1985(3) of the federal Civil Rights Act provides a cause of action to parties injured as a result of a conspiracy by two or more persons for the purpose of depriving "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), sets the framework for a cause of action under § 1985(3). To come under the legislation, a complaint must allege (1) a conspiracy for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (2) an act by one of the conspirators in furtherance of the object of the conspiracy: (a) whereby another person was injured, or (b) deprived of exercising any right or privilege of a citizen of the United States.

■ " * * * An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims. * * *" Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir. 1970), cert. denied 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). See also Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967); York v. Story, 324 F.2d 450 (9th Cir. 1963), cert. denied 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), and 2A Moore's Federal Practice ¶ 12.08, at 2271–2274 (2d ed. 1974). Plaintiffs' action shall be examined in this light.

■■ Construing the facts in a light most favorable to the plaintiffs, I still

cannot find that they have alleged a conspiracy. It is impossible for one individual to conspire with himself. Section 1985(3) requires that "two or more persons" conspire. In the case at hand, Caroline Yeska, however guilty her state of mind, must be shown to have shared in the knowledge and design of the conspiracy. Admittedly there was a civil wrong here but not a conspiracy. The failure to adequately show this in the complaint signifies that the cause of action must fail. See Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972); Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1933).

Even if I had been able to find an adequately alleged "conspiracy," I would still have had to dismiss the plaintiffs' complaint for other reasons. The United States Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 99, 91 S. Ct. 1790, 1796, 29 L.Ed.2d 338 (1971), noted that § 1985(3) does not expressly require state action and stated:

"* * * An element of the cause of action established by * * * 42 U.S.C. § 1983, is that the deprivation complained of must have been inflicted under color of state law. To read any such requirement into § 1985(3) would thus deprive that section of all independent effect. * * *"

This omission is significant. Section 1983 applies only to conduct under color of state law. Section 1985(3) applies to purely private conspiracies. Subsequent to Griffin, the Seventh Circuit in Dombrowski v. Dowling, 459 F.2d 190, 194 (7th Cir. 1972), stated that the omitted language in § 1985(3)—

"* * * is directed to the proscribed conduct of the defendants rather than the nature of the plaintiffs' rights which are protected by the statute. Thus, although Griffin makes it perfectly clear that some purely private conspiracies among defendants are proscribed by § 1985(3), Griffin did not purport to delineate the scope of the rights secured by the statute."

In attempting to determine the scope of the rights secured by § 1985(3) (i. e., plaintiffs' protected rights), the Seventh Circuit noted that although the language of §§ 1983 and 1985(3) is not the same, the coverage of the two sections is coextensive. The parallel provisions of the criminal code dealing with private conspiracies (18 U. S.C. § 241) and individual conduct under color of state law (18 U.S.C. § 242) have been compared and found to be "identical in the scope of the rights they secure." Screws v. United States, 325 U. S. 91, 120, 65 S.Ct. 1031, 1044, 89 L.Ed. 1495 (1945). See United States v. Guest, 383 U.S. 745, 753, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). Since the scope of § 1985(3) coverage has yet to be fully determined, the Dombrowski court identified three categories of protected rights which have been held to fall within § 1985(3). Firstly, there has been express recognition of the thirteenth amendment rights afforded to black citizens; and secondly, to their federal right to interstate travel. Thirdly, recognition has been afforded to those rights protected by the fourteenth amendment. As concerns this third category, however, the court stated that "[w]e think the § 1983 cases make it clear that in this third category a 'state involvement' requirement must survive Griffin." Dombrowski v. Dowling, 459 F.2d 190, 195 (7th Cir. 1972).

A minute examination of plaintiffs' complaint neither discloses a thirteenth amendment claim nor any allegation that the plaintiffs' right to interstate travel has been abridged. What is disclosed is that plaintiffs' case is based on their allegation that they have been deprived of several fourteenth amendment rights. Under the prevailing rule of this circuit, I am required to find some "state involvement" in order to entertain plaintiffs' case. No such state action is alleged by the plaintiffs, and I cannot find it for them.

In so deciding, this court is aware of the recent concern for the welfare of migrant workers. It may well be that if

plaintiffs' allegations are true, they have been wronged by defendants' actions, but this court has no jurisdiction to decide the extent of that wrong as we are controlled by the confines of § 1985(3). The Supreme Court clearly stated in Griffin v. Breckenridge, supra, 403 U.S. at 101–102, 91 S.Ct. at 1798:

"* * * That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' * * * "

For the above reasons,

It is ordered that defendants' motion to dismiss this action be and it hereby is granted.