**Michael I. SELZER, Plaintiff,**

v.

**Morton BERKOWITZ, Phillipa Strum, Ellen Frey-Wouters, Martin Fleisher, Michael Kahan, Herbert Weiss, Robert Engler, David W. Abbott, Robert Curvin, Mathan Schmukler, Donald R. Reich, John W. Kneller, and Harold M. Jacobs, Chairman, and Edith B. Everett, Ronald T. Gault, Jack John Olivero, David Z. Robinson, Patricia Carry Stewart, Loretta A. Conway, Walter H. Crowley, Armand E'Angelo, Gurstin D. Goldin, Alpert V. Maniscalco, David Valinsky, Emanual R. Piore, Joan B. Maynard, Joaquin Rivera and Edward A. Roberts, Members of the Board of Higher Education of the City of New York, the Board of Higher Education of the City of New York, and Robert J. Kibbee, Chancellor of City University of New York, Defendants.**

**No. 77C 1897.**

United States District Court, E. D. New York.

Oct. 27, 1978.

■■■

Donovan, Leisure, Newton & Irvine, New York City (Walter L. Stratton, G. Russell Miller and Richard H. Rubin, New York City, of counsel), for plaintiff.

Allen G. Schwartz, Corp. Counsel, City of New York, New York City (Edward J. Schwarz, Patrick F. X. Mulhearn and Frances Loren, Sp. Asst. Corp. Counsels, New York City, of counsel), for defendants.

## OPINION and ORDER

THOMAS C. PLATT, District Judge.

Plaintiff has brought an action for declaratory injunction and monetary relief pursuant to the First and Fourteenth Amendments, 42 U.S.C. §§ 1983, 1985(3) and 1986, and Article 1, §§ 8, 9 and 11 of the Constitution of the State of New York. Plaintiff alleges that, in not recommending him for tenure at Brooklyn College, defendants deprived him of his rights, privileges and immunities. Defendants have moved to dismiss plaintiff's allegations brought under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1985(3), 1986, on the grounds that the amended and supplemental complaint fails to establish subject matter jurisdiction and fails to state a claim upon which relief can be granted.[1]

### FACTS

Plaintiff, an Assistant Professor of Political Science at Brooklyn College, was denied reappointment with tenure and promotion for the academic year 1978–1979. Defendants are members of the Brooklyn College

---

1. In view of the fact that defendants' motion to dismiss plaintiff's claims under 42 U.S.C. § 1986 is completely dependent on the purported invalidity of plaintiff's Section 1985(3) claim, the Court's analysis will focus solely on the latter claim.

administrative and faculty committees which evaluate tenure candidates,[2] and which, specifically, voted against the recommendation of his tenure and promotion. Defendant Kneller stated that the reasons for plaintiff's dismissal lay in the inadequacy of his scholarly research and publications. Plaintiff alleges, however, that the defendants denied him tenure and promotion pursuant to a conspiracy motivated by an anti-CIA animus which prompted defendants to seek means to punish plaintiff for cooperating with representatives of the CIA and to deter other academicians from similar action.

Following a trip to Europe, plaintiff submitted himself to CIA debriefing. He alleges that he confided the fact of his debriefing in defendant Kahan, his brother-in-law, and a colleague in the Political Science Department. Kahan then allegedly notified the Appointments Committee and the Chairman of the Department. Plaintiff asserts that, as a result, the Appointments Committee met on November 22, and December 6, 12 and 14, 1976 to consider means of dealing with his association with the CIA. At the Department meeting on December 15, 1976, plaintiff read a statement generally describing the request made of him by the CIA. On December 20, 1976, the Department held a special meeting wherein they formed an ad hoc committee to recommend departmental policy regarding CIA contacts. The ad hoc committee allegedly considered various means of dealing with plaintiff's CIA association, including disciplinary proceedings and tenure denial.

On January 12, 1977 the ad hoc committee presented its recommendations to the Department. Pursuant to these recommendations, the Department adopted the following statement of general policy:

It is the position of the members of the Political Science Department that the standards and ethics that underlie membership in the academic community preclude at the very least any agreement by a faculty member to engage in covert activities for a government intelligence-gathering agency . . . .. Should the Department be convinced that a member has violated its policy, it will ask the President of the College to institute proceedings under Article XXI of the Professional Staff Contress contract, which permits the President to discipline a faculty member for "conduct unbecoming a member of the staff" through "removal, suspension with or without pay, or any lesser form of discipline . . . .."

Plaintiff asserts that the Department applied its newly adopted policy to him and issued a statement holding that plaintiff's association with the CIA was "inconsistent with membership in the faculty and would warrant [his] removal from the college."

Defendant Kneller, President of Brooklyn College, then referred the matter to the Provost. But, before the Provost Committee had completed its deliberations, Kneller publicly announced his decision to recommend against plaintiff's promotion and tenure. In that announcement Kneller criticized both the plaintiff and the Department for the handling of the CIA matter, stating that there were insufficient grounds to warrant instituting formal charges. Soon after, the faculty and administration committees voted against plaintiff's bids for promotion and tenure. Based on these votes, the President also refused to recommend that plaintiff be granted tenure.

## DISCUSSION

■ Specifically, defendants argue that under the Supreme Court decision in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790,

2. Specifically, defendant Berkowitz was Chairman of the Political Science Department. Berkowitz also served on the Appointments Committee with defendants Fleisher, Frey-Wouters, Strum and Kahan. Defendant Kneller was President of Brooklyn College; defendant Reich was Provost and Vice President; defendant Schmukler was Dean of the School of Social Sciences and a member of the Personnel and Budget Committee. Defendants Strum, Curvin, Engler and Abbott were members of an ad hoc committee to recommend a departmental policy regarding faculty contacts with the CIA.

29 L.Ed.2d 338 (1971), plaintiff must plead and prove a racial or otherwise class-based invidiously discriminatory animus behind the alleged conspiracy. In this regard, defendants argue that plaintiff's complaint at best only alleges discrimination against a class consisting of those "members of the teaching profession who talked or associated with the CIA or who wish to talk to or associate with the CIA in the future." Such a class, defendants claim, is not clearly enough defined for purposes of Section 1985(3) coverage. Moreover, defendants argue that such a class is not normally protected by Section 1985(3); this statute, according to defendants, was only intended to protect classes "akin to race, and . . . those which historically have been subjected to discrimination, such as classes based on religion, national origin or sex." (Memorandum of Law in Support of Defendants' Motion to Dismiss at 13.)

This Court feels that defendants' interpretation of the scope of coverage of Section 1985(3), as reflected in the above argument, is unduly restrictive and that the relevant case law does not justify the resultant conclusion that plaintiff has failed to state a claim under Section 1985(3).

In reaching this conclusion, the Court notes at the outset that the Supreme Court's decision in *Griffin v. Breckenridge, supra,* arguably may have done more to create confusion than to resolve it. While *Griffin* quite clearly established that Section 1985(3) extends to purely private conspiracies, the Court's requirement, as noted above, of a racial or otherwise class-based invidiously discriminatory animus as part of a 1985(3) conspiracy claim has led to much confusion in the lower courts over (i) what constitutes a sufficient class for the purposes of Section 1985(3), and (ii) what rights the statute covers so as to render a conspiracy aimed at the deprivation of same a violation.

As to the question of what constitutes a sufficient class for the purposes of 1985(3), many courts, as plaintiff points out, have accepted as sufficient for the purposes of Section 1985(3) class definitions which fall outside those which defendants argue are alone entitled to statutory protection, i. e., those "akin to race, and . . . those which historically have been subjected to discrimination, such as classes based on religion, national origin or sex." Thus, for example, courts have upheld as proper classes for 1985(3) claims those consisting of political demonstrators, *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Brown v. Villanova Univ.,* 378 F.Supp. 342 (E.D.Pa.1974); environmentalists, *Westberry v. Gilman Paper Co.,* 507 F.2d 206 (5th Cir. 1975), *vacated as moot,* 507 F.2d 215 (5th Cir. 1975); political campaign workers, *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1974), *cf. Puentes v. Sullivan,* 425 F.Supp. 249 (W.D.Texas 1973); striking teachers, *Bradley v. Clegg,* 403 F.Supp. 830, 833 (E.D.Wis.1975); and even a single white middle class family, *Azar v. Conley,* 456 F.2d 1382 (6th Cir. 1972). Plaintiff's class definition of "members of the teaching profession who talked or associated with the CIA or who wish to talk to or associate with the CIA" would therefore appear to be a perfectly proper class definition in light of the above precedents.

This Court must also reject defendants' argument that the alleged class in the instant case is not clearly enough defined and is too amorphous to support a 1985(3) claim. The fact that plaintiff may not be able to identify specifically other class members or even prove similar conspiracies directed against such other class members does not prevent this Court from finding a sufficiently defined class. While, as defendants point out, plaintiff will have to prove at trial that the conspiracy directed against him was motivated by a class-based discriminatory animus and not just antagonism towards the plaintiff personally, see, *Hughes v. Ranger Fuel Corp., Div. of Pittston Co.,* 467 F.2d 6, 10 (4th Cir. 1972); *Kletschka v. Driver,* 411 F.2d 436, 447 (2d Cir. 1969); *Duff v. Sherlock,* 432 F.Supp. 423 (E.D.Pa.1977), plaintiff is entitled, based on the allegations made, to an opportunity to prove so at trial.

Indeed, the fact that plaintiff's class definition arguably comes not only from the mere allegations of his complaint but also from the Brooklyn College Department of Political Science's own statements reinforces this conclusion. The first such statement related to general policy regarding propriety of a faculty member engaging in "covert activities for a government-intelligence-gathering agency"; the other specifically called for disciplinary action against the plaintiff for such activity. In view of these public statements, it is clear that plaintiff has not just "merely alleged" a class-based discriminatory animus and it is likewise clear that his complaint sufficiently defines a class for the purpose of Section 1985(3).

[3] Having concluded that plaintiff has adequately defined a class and alleged a sufficient discriminatory animus for the purpose of Section 1985(3), the question remains as to whether the alleged conspiracy threatened deprivation of such rights as are intended to be protected by 1985(3). In this regard, the case law clearly indicates that a conspiracy aimed at depriving someone of his First Amendment rights of freedom of speech and freedom of association is cognizable under Section 1985(3) in those cases (as here) where state action is alleged. *See, Murphy v. Mount Carmel High School,* 543 F.2d 1189, 1194 (7th Cir. 1976); *Bellamy v. Mason's Stores, Inc. (Richmond),* 508 F.2d 504, 506 (4th Cir. 1974); *Flores v. Yeska,* 372 F.Supp. 35 (E.D.Wis.1974). *But see, Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971). Therefore, plaintiff has sufficiently alleged a conspiracy to deprive him of a right which is covered by the statutory prohibition.

 While the above conclusions that plaintiff has sufficiently defined a class, alleged a class-based discriminatory animus, and charged defendants with a conspiracy prohibited by the statute would fully justify denial of defendants' motion to dismiss, an alternative reason also justifies denial.

Specifically, this Court feels that, given the allegation of state action, compliance with the *Griffin* standard of a class-based discriminatory animus is not required. While this conclusion directly conflicts with that of the Seventh Circuit in *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538 (7th Cir. 1975), the Court nevertheless feels that a close analysis of the *Griffin* decision bears out this result.

In *Griffin,* the Supreme Court, as noted above, substantially extended the coverage of Section 1985(3) to include private conspiracies. In so doing it surmounted two substantial problems. The first was one of statutory interpretation, the second, one of constitutionality.

As to the question of statutory interpretation, the Court had to find statutory justification for the extension of coverage to private conspiracies. In so doing, though, the Court felt compelled to limit the scope of otherwise extremely broad statutory language[3] so as to prevent the statute from becoming the basis of a "general federal tort law". *Griffin, supra,* 403 U.S. at 101–102, 91 S.Ct. 1790. Consequently, the Court established the requirement of a class-based discriminatory animus as a prerequisite to a valid 1985(3) claim. Thus, the statute would cover only those private conspiracies motivated by a class-based discriminatory animus.

The Court found support for this conclusion in the legislative history of Section 1985(3). The legislators expressed concern over the apparent broad sweep of the original statutory language and intended to amend it so as to limit its scope by inserting a requirement of discriminatory animus and motivation. *Griffin, supra,* 403 U.S. at 100–103, 91 S.Ct. 1790. It must be noted and emphasized, however, that the concern of the Supreme Court in *Griffin,* and of the legislators in so limiting the scope of 1985(3), was with its possible extension to

---

**3.** The statute is directed at conspiracies of "two or more persons in any State or territory." Having decided that such statutory language be taken literally to embrace purely private conspiracies, there would have appeared to be no obvious statutory limitation preventing application of the statute to any and all private conspiracies.

any and all private conspiracies.[4] As the Court itself stated in *Griffin, supra,* 403 U.S. at 101, 91 S.Ct. at 1798:

"For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.'"

To argue, as defendants do, that the concern voiced by the legislators and the Supreme Court over the propriety and legitimacy of excessive prohibition of purely private conspiracies also applies to conspiracies involving state action is to subvert the obvious legislative intent. It is simply inconceivable to this Court that the legislators who framed Section 1985(3), as well as the Supreme Court that decided the *Griffin* case, did not intend that it apply to any and all conspiracies involving state action which threaten deprivation of rights protected under the statute, even if such conspiracies are not motivated by a class-based discriminatory animus and are simply directed solely at the individual. A contrary conclusion would run counter to the essential purpose and intent of the Fourteenth Amendment and the statutes, such as 1985(3), enacted pursuant thereto.

As noted above, the Court in *Griffin* also faced the problem of the constitutionality of application of 1985(3) to private conspiracies. In the *Griffin* case, the Court solved this problem by finding constitutional support in the Thirteenth Amendment and Congress' inherent power to enact laws protecting and assuring every citizen's constitutional right to travel. *Griffin, supra,* 403 U.S. at 106, 91 S.Ct. 1790. This problem of constitutional justification for application of 1985(3) to private conspiracies is a recurring one which every court has had to confront. *See, e. g., Means v. Wilson,* 522 F.2d 833 (8th Cir. 1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976). Indeed, it is precisely for this reason that the courts have consistently held that a state action requirement survives *Griffin* in cases, such as the instant one, involving conspiracies to deprive someone of First Amendment rights. However, again as noted above, given plaintiff's allegation of

---

**4.** Indeed, it is significant in this regard that the Court in *Griffin* did not comment on or otherwise qualify prior case law applying Section 1985(3) to conspiracies involving state action without requiring a class-based or discriminatory animus, *see, Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Hoffman v. Halden,* 268 F.2d 280, 292 (9th Cir. 1959); *Morgan v. Null,* 120 F.Supp. 803, 804 (S.D.N.Y. 1954), *aff'd per curiam,* 228 F.2d 411 (2d Cir. 1955), *cert. denied,* 351 U.S. 914, 76 S.Ct. 705, 100 L.Ed. 1448 (1956). The reason for this notable silence is evident from a close reading of the Supreme Court's decision in *Collins v. Hardyman,* 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). In that case, the Court declined to apply 1985(3) to a private conspiracy, the step which it finally took in the *Griffin* case. Interestingly, in reaching this conclusion, the *Collins* Court noted that (341 U.S. at 661, 71 S.Ct. at 942):

"What we have here is not a conspiracy to affect in any way these plaintiffs' equality of protection by the law, or their equality of privileges and immunities under the law. There is not the slightest allegation that defendants were conscious of or trying to influence the law, or were endeavoring to obstruct or interfere with it. The only inequality suggested is that the defendants broke up plaintiffs' meeting and did not break up meetings of others with whose sentiments they agreed. To be sure, this is not equal injury, but it is no more a deprivation of 'equal protection' or of 'equal privileges and immunities' than it would be for one to assault one neighbor without assaulting them all, or to libel some persons without mention of others. *Such private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so.*" (Emphasis added.)

The above quote suggests that the presence of state action *in any conspiracy* to deprive someone of rights protected under 1985(3) satisfies the statutory prerequisites of a conspiracy to deprive "any person or class of persons of the *equal protection of the laws,* or of *equal privileges and immunities under the laws.*" (Emphasis added.) Thus, given a conspiracy involving state action, fulfillment of the *Griffin* prerequisite of a class-based invidiously discriminatory animus is not required; the conspired deprivation of "equal protection of the laws" or "equal privileges and immunities under the law" arising by virtue of the presence of state action.

state action, this is no constitutional obstacle to plaintiff's complaint here.

## CONCLUSION

Plaintiff's complaint adequately states a claim under Section 1985(3), both because plaintiff has complied with the prerequisites laid down by the Supreme Court in the Griffin case, and, given the allegation of state action, because the mere allegation of a conspiracy to deprive plaintiff of his First Amendment rights alone would have sufficed.

Accordingly, defendants' motion to dismiss plaintiff's claims made under 42 U.S.C. § 1985(3), 42 U.S.C. § 1986 and 28 U.S.C. § 1343 must be, and the same hereby is, denied.

SO ORDERED.