**Mark H. FELDMAN pro se, Plaintiff,**

v.

**JACKSON MEMORIAL HOSPITAL, etc., et al., Defendants.**

No. 79–758–Civ.–JWK.

United States District Court, S. D. Florida.

Feb. 23, 1981.

As Corrected March 17, 1981.

Mark H. Feldman, pro se.

J. Elisabeth Middlebrooks, Richard B. Adams, A. Blackwell Stieglitz, Miami, Fla., for defendants.

## MEMORANDUM ORDER ON MOTION TO DISMISS

KEHOE, District Judge.

Mark H. Feldman, a licensed podiatrist, has filed this *pro se* action against multiple defendants, including many physicians, hos-

pitals and medical administrators located in the southern Florida geographical area. Central to plaintiff's cause is his allegation that the defendants have willfully and maliciously acted to prevent him from practicing podiatry[1] in certain public and private hospitals by denying him membership on the medical staff normally granted licensed physicians. Plaintiff alleges that the defendants' actions have amounted to a conspiracy in restraint of trade and that they have deprived him of his constitutionally guaranteed civil rights.

Plaintiff's original 54 page Complaint was dismissed without prejudice on the grounds that it was repetitious, redundant and violated rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff was subsequently permitted to amend his Complaint and filed an Amended Complaint considerably abridged to 14 pages. The defendants have responded to the Amended Complaint by renewing their original joint motion to dismiss pursuant to Fed.R.Civ.P.

12(b) and adopting the arguments (with some supplementation) contained therein. They contend that, notwithstanding its newly condensed format, the Amended Complaint remains incurably defective since, *inter alia*, the Court lacks jurisdiction over the subject matter of the action, and it fails to state a claim upon which relief can be granted.

The Court reserved ruling on the matter until the defendants had an opportunity to depose the plaintiff in order to ascertain more fully the specific allegations underlying his cause of action. Plaintiff has now been deposed and accordingly, the motion to dismiss is ripe for consideration by the Court.

## I. THE STANDARD BY WHICH THE AMENDED COMPLAINT MUST BE MEASURED

Plaintiff's Amended Complaint is directed against numerous parties, among them various doctors, medical administrators, public and private hospitals.[2] Plaintiff

---

**1.** "The diagnosis and treatment of foot disorders." J. Schmidt, Attorneys' Dictionary of Medicine and Word Finder (1980).

**2.** The Amended Complaint contains the following list of defendants: Jackson Memorial Hospital; The Board of Trustees, Public Health Trust of Dade County, Florida; Fred J. Crowell, President, Public Health Trust; William W. Cleveland, M.D., President of the Medical Staff; Robert Zeppa, M.D., Chief of Surgery; William McCollough, M.D., Chief of Orthopedics; Agusto Sarmiento, M.D.; Wallace Miller, M.D.; Harry Berrer, M.D.; Alan Cohen, M.D.; Edward Cullipher, M.D.; Harvey Grable, M.D.; Ledford Gregory, M.D.; Michael Gurver, M.D.; Marshall Hall, M.D.; Claude Holmes, M.D.; Arthur Pearl, M.D.; Salvador Ramirez, M.D.; Thomas Samartino, M.D.; Mario Stone, M.D.; William Terheyden, M.D.; Samuel Turek, M.D.; and Cedars of Lebanon Hospital Corp., Inc.; and Cedars of Lebanon Hospital Care Center, Inc.; Dr. Jay Ziskind; Rufus Broadaway, M.D., Chief of Surgery; Marshall Hall, M.D., Chief of Orthopedics; Eugene Konrad, M.D., Chief of the Medical Staff; Harry Beller, M.D.; Alan B. Cohen, M.D.; Edward Cullipher, M.D.; Harvey Grable, M.D.; Salvador Ramirez, M.D.; Mario Stone, M.D.; and Mount Sinai Medical Center, Inc.; Alvin Goldberg, Executive Director; Harold Glick, M.D., Chief of the Medical Staff; Charles Weiss, M.D., Chief of Orthopedics; Sheldon Marne, D.P.M., Podiatrist; Mario Stone, M.D.; Samuel Turek, M.D.; Alvin Tobis, M.D.; Lester Russin, M.D.; and South Broward

Hospital District, Memorial Hospital of Hollywood, Inc.; Maynard Abrams, Chairman, South Broward Hospital District; S.A. Mudano, Administrator; Robert Berger, M.D., Chief of Staff; Harry Fisher, M.D., Chief of Orthopedics; Paul Baxt, M.D.; Larry Rosenbaum, M.D.; Alfonso Petty, M.D.; George Crane, M.D.; Robert Niles, M.D.; North Broward Hospital District, Inc.; North Broward Hospital District Board of Commissioners; Hamilton Forman, Chairman; Bernie Welch, District Director and Hospital Administrator; Broward General Medical Center, Inc.; George F. Rahilly, M.D., Chief of Staff and Orthopedic Surgeon; and North Broward Hospital, Inc.; Robert L. Kennedy, Administrator; B. McNierney, M.D.; J. Gamble, M.D.; Niles Lestrange, M.D.; Peter Sciarrett, M.D.; Wylie Scott, M.D.; and Florida Medical Center Hospital, Inc.; Maxwell Dauer, Ph.D.; Frank Stein, M.D.; Alvin Stein, M.D.; Gary Krulik, M.D.; and Bennett Community Hospital, Inc.; and Holy Cross Hospital, Inc.; and North Beach Medical Center, Inc.; and Pembroke Pines General Hospital, Inc.; David Drant, M.D.; Martin Medelson, M.D.; Alfonso Petti, M.D.; Robert Bronfman, M.D.; Neil Beinhaker, M.D.; Larry Rosenbaum, M.D.; and Imperial Point Hospital, Inc.; George F. Rahilly, M.D.; Sidney Cole, M.D.; Doctors General Hospital, Inc.; D. L. Gross, Administrator; E. Rockwood, D.O.; International Hospital, Inc.; John Silver, Administrator; and North Miami General Hospital, Inc.; Robert Bruce, Administrator; Lloyd Moriber, M.D.,

alleges: (a) that certain defendant physicians conspired with the defendant hospitals to prevent him from competing in the medical marketplace by arbitrarily rejecting his application to practice podiatry in those hospitals; (b) that the defendants conspired to ruin plaintiff's podiatry practice and drive him out of business; (c) that the defendants interfered with plaintiff's right to practice his chosen profession and to contract with patients regarding medical services; (d) that the defendants maliciously discriminated against him solely because he is a podiatrist and not a physician; and (e) that the defendants generally violated his civil rights. Plaintiff seeks a judgment from the Court which would primarily rule that he cannot be denied membership on the staff of the defendant hospitals, that would allow him the use of the medical facilities of those hospitals, and that would enjoin the defendants from controlling or regulating the practice of podiatry in any way. Plaintiff also seeks compensatory and punitive damages totaling 50 million dollars.

Plaintiff invokes the Court's jurisdiction under 28 U.S.C. §§ 1343, 2201, 2202, 15 U.S.C. §§ 15, 26, and 42 U.S.C. §§ 1983, 1985 and 1986. The Court has jurisdiction to decide all of the issues raised by the motion to dismiss.

When determining a motion to dismiss, of course, the Court is obliged to construe all of the material allegations contained in the Amended Complaint in the light most favorable to the plaintiff with those allegations accepted as true. See, e. g., *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Voter Information Project v. City of Baton Rouge*, 612 F.2d 208 (5th Cir. 1980); 5 Wright & Miller, *Federal Practice and Procedure*: Civil § 1363 (1969). Moreover, dismissal of an action on a barebones pleading should always be carefully and deliberately considered since it is a precarious option with a high mortality rate. *Voter Information Project*, supra; *Barber v. M/V "Blue Cat,"* 372 F.2d 626 (5th Cir. 1967).

▪ Plaintiff has proceeded *pro se* with his action from its inception despite the Court's admonition that the assistance of counsel would be highly beneficial in this case, a cause involving several subtle and complex issues of law. In considering the motion to dismiss, however, the Court has not penalized plaintiff for proceeding in his own behalf where the law mandates that *pro se* pleadings are to be held to a less stringent standard than those drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Craft v. Texas Board of Pardons & Paroles*, 550 F.2d 1054 (5th Cir.), cert. denied, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977); *Shaw v. Briscoe*, 541 F.2d 489 (5th Cir. 1976), cert. denied, 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977); *Bruce v. Wade*, 537 F.2d 850 (5th Cir. 1976); *Williams v. McCall*, 531 F.2d 1247 (5th Cir. 1976); *Cook v. Whiteside*, 505 F.2d 32 (5th Cir. 1974).[3] Indeed, the Court finds plaintiff's Amended Complaint to be rather skillfully drafted when considering the complex issues raised and the fact that plaintiff has no prior legal experience.

Following the guidance of these fundamental principles, the Court has conducted a careful review of the Amended Complaint and concludes that plaintiff is unable to state a claim upon which relief can be granted as to that portion of the Amended Complaint asserting violations of his civil rights. As for the remainder of the Amended Complaint alleging antitrust vio-

Chief of Orthopedics; Melvyn Drucker, M.D.; and Cypress Community Hospital, Inc.; Barry Schochet, Administrator; and North Ridge General Hospital, Inc.; David Cornell, Administrator. Some of the defendants have been listed more than once in the style of the Amended Complaint.

One of the contentions raised by the defendants in their joint motion to dismiss is that not all defendants have been properly served. The Court will reserve ruling on the service aspects of the motion to dismiss.

**3.** Although these cases all arise in the context of prisoner pro se pleadings, the same standard should apply to a nonprisoner plaintiff where he chooses to proceed in his own behalf.

lations, the Court concludes that it would be premature to dismiss at the present stage of the proceedings. A discussion of the rationale behind this determination is in order.

## II. GENERAL PLEADING REQUIREMENTS

Fed.R.Civ.P. 8(a) enunciates the general standard that a pleading must meet in order to withstand a motion to dismiss. The pleader is entitled to considerable latitude regarding the mode of stating his claim for relief, provided the pleading gives reasonable notice of the claim or claims asserted. The Court considers the Amended Complaint amply sufficient to meet the general notice requirements of Rule 8 by adequately setting forth a claim and giving the defendants fair notice of its basis. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 5 Wright & Miller, *Federal Practice and Procedure* : Civil §§ 1216, 1217, 1286 (1969).[4]

## III. SHERMAN ACT ALLEGATIONS

The Sherman Act, 15 U.S.C. § 1 et seq., was enacted in 1890 to prohibit combinations and conspiracies in restraint of trade [Section 1], and to regulate monopolies [Section 2]. Federal jurisdiction is predicated upon an allegation that the actions of the defendant have some nexus or connection with interstate commerce. Before the federal court can acquire jurisdiction, a plaintiff must show that the defendant's actions substantially and adversely affect interstate commerce. Failure to satisfy this threshold jurisdictional prerequisite will result in the dismissal of the complaint.

The general scope of the Sherman Act encompasses the entire regulatory power granted Congress under the Commerce Clause. *Apex Hosiery Company v. Leader*, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). Although the act includes more than simply a restraint on trade motivated by a desire to limit interstate commerce, federal enforcement must turn initially on whether or not the acts alleged in the complaint could likely have a substantial and adverse effect upon interstate commerce. *Hospital Building Company v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); *Burke v. Ford*, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). If so, even a wholly intrastate activity may be regulated by the Sherman Act where that activity would place an unreasonable burden on the "free and uninterrupted flow of interstate commerce." *Rex Hospital*, supra, 96 S.Ct. at 1853. As one commentator described the jurisdictional test to be applied in determining the sufficiency of a Sherman Act complaint:

> [The] test applies when the challenged conduct is not "in commerce;" it will nevertheless be subject to the Act if it materially affects interstate commerce. In deciding these issues, quantitative factors become pertinent. It is necessary not only that there be a logical causal connection between the activity and the flow of commerce, it is also necessary that the flow of commerce be affected in some substantial way; if the impact is trivial, the Sherman Act does not apply. Thus, the only commercial activities beyond the reach of the Sherman Act are those which are local in the double sense that they are neither within nor have any significant effect on the flow of interstate commerce. [footnotes omitted]

L. Sullivan, *The Law of Antitrust* (1977), § 233 at 710.

Plaintiff's allegations respecting interstate commerce are contained in paragraphs 24 through 28 of the Amended Complaint:

> 24. A significant number of patients, actual and potential of the plaintiff and defendant doctors and hospitals, are covered by the Federal Medicare and State Medicaid Programs. Treatment of those patients generates millions of dollars of interstate revenue.

---

4. Out of an abundance of caution and at the defendants' request, the Court ordered plaintiff deposed in order that the underlying nature of his claim was more readily understood. As a result, the defendants were fully apprised of the nature of this claim.

25. Defendant hospitals annually receive millions of dollars from insurance companies located outside of Florida for medical and surgical services provided by defendant hospitals and doctors to non permanent nonresident patients.

26. Defendant doctors and hospitals purchase millions of dollars of supplies and equipment from sources outside of the state.

27. Rules and regulations promulgated by defendant doctors and hospitals to control the practice of Podiatrists, by limiting the privileges, refusing admittance, came from out of state sources [sic], as in the instance of defendant Jackson Memorial Hospital, whose GUIDELINES FOR PODIATRY came from THE DEPARTMENT OF ORTHOPEDIC SURGERY at the Massachusetts General Hospital in Boston, Mass.

28. Cessation and interruption of Podiatry Clinics and Training programs in defendant hospitals denied to out of state Podiatrists essential surgical training necessary to compete for surgical patients in their home States. Elimination of said training programs by defendant hospitals and orthopedic surgeons prevented out of state Podiatrists from coming to Florida specifically for such surgical training programs.

Plaintiff's first jurisdictional hurdle is to establish the required nexus between the defendants' challenged activity and interstate commerce. It is this Court's determination that plaintiff has met this burden and properly invokes the Court's jurisdiction under the Sherman Act.

▪ The restraint that plaintiff opposes in his action is that involving an alleged conspiracy by the defendants to deny podiatrists in general,[5] and the plaintiff in particular, a certain kind of access to hospital facilities, that access accorded members of the hospital's medical staff. Membership in the medical staff is usually limited to licensed physicians.

The hospitals involved in this action furnish medical care and services to the community in a variety of ways: by caring for patients, training doctors and staff personnel, developing research facilities, and extending staff privileges to private physicians. Much of this activity happens to spill across the boundaries of Florida and into the stream of interstate commerce.

It is this activity of providing medical care to patients that the defendants allegedly seek to exclude plaintiff from participation and involvement. It is this activity that must be connected with interstate commerce in order to sustain jurisdiction. Plaintiff must establish that the medical services supplied by the defendants have the required effect on interstate commerce. He is not required to show that the alleged conspiratorial actions of the defendants have any connection with interstate commerce. To rule otherwise would vitiate the intended scope of the law and impose an insuperable burden upon a plaintiff alleging an anticompetition conspiracy. Such a conspiracy would seldom reach interstate proportions though the object of the conspiracy might be federal in scope.

The Court's conclusion that the Amended Complaint is jurisdictionally sound is supported by the recent decision of *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), in which the Supreme Court held that the district court erred in dismissing a complaint which alleged a price fixing conspiracy involving several Louisiana real estate brokerage firms. The Court stated that the plaintiff could establish the requisite jurisdiction under the Sherman Act by demonstrating that a substantial effect on interstate commerce was generated by the defendants' brokerage activities. Referring specifically to the requirement that plaintiff must allege a relationship between the activity involved and some aspect of interstate commerce, the Court observed:

To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a

---

5. There are no class action allegations contained in the Amended Complaint.

substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful. The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect. This is not the rule of our cases. See *American Tobacco Co. v. United States*, 328 U.S. 781, 811, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946); *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 225, n. 59, 60 S.Ct. 811, 846, 84 L.Ed. 1129 (1940)....

Id. 100 S.Ct. at 509.

Defendants have cited several cases in their memoranda which would appear to support dismissal of the Amended Complaint: *Wolfe v. Jane Phillips Episcopal Memorial Medical Center*, 513 F.2d 684 (10th Cir. 1975); *Riggal v. Washington County Medical Society*, 249 F.2d 266 (8th Cir. 1957); *Spears Free Clinic and Hospital v. Cleers*, 197 F.2d 125 (10th Cir. 1952). These cases all involved dismissals of complaints for defective jurisdictional allegations under the Sherman Act in situations similar to that now before this Court. The dismissed antitrust complaints in the cases cited appear to involve only general jurisdictional allegations devoid of the specificity contained in plaintiff's Amended Complaint. Furthermore, these cases explicitly reject the analysis described above which links jurisdiction to the stream of interstate commerce by focusing upon the interstate nature of the defendants' business of providing hospital care and services. E. g. *Wolfe*, supra at 687–688.

It is the Court's opinion that the proper standard to be used is that illustrated in the recent Supreme Court cases, *McLain*, supra; *Rex Hospital*, supra, that place the emphasis upon the interstate character of the defendants activities in general and not solely the alleged conspiratorial acts, thereby precluding dismissal of a complaint before the plaintiff has at least been accorded the opportunity of discovering facts in support of his claim. To the extent that the cases cited by the defendants apply a contrary standard, the Court declines to follow them.

The Court will determine the substance of plaintiff's antitrust allegations after he has had an opportunity to conduct limited discovery into the issues and can prepare an adequate response to the other objections raised by the defendants. Defendants will then be allowed to renew their remaining objections to the Sherman Act claim in an appropriate manner.

## IV. CIVIL RIGHTS CLAIMS

### (a) § 1983 allegations

Although 42 U.S.C. § 1983 is relatively simple and straightforward in its language,[6] in order to sustain his claim plaintiff must allege: (1) that the defendants deprived him of some right secured by the Constitution or laws of the United States; and (2) that the defendants acted under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fadjo v. Coon*, 633 F.2d 1172 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980). Both of these elements of a § 1983 action must be alleged and proven before relief can be forthcoming. An inspection of the Amended Complaint reveals that plaintiff can prove no set of facts that will permit the relief he seeks since he has been deprived of no federal or constitutional right. Nor have all of the defendants acted under color of state law.

6. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ The defendants' alleged willful and malicious exclusion of the plaintiff from the medical staff simply does not constitute a violation of a federal right. Plaintiff has cited the Court to no authority supporting the proposition that a podiatrist has a federal right to membership on a hospital staff. Nor has the Court independently found any authority to support plaintiff's civil rights claims. To the contrary, the Fifth Circuit recently held that a podiatrist's constitutional rights went untrammeled when he was denied staff membership at a public hospital. *Shaw v. Hospital Authority of Cobb County*, 614 F.2d 946 (5th Cir.), cert. denied, — U.S. —, 101 S.Ct. 362, 66 L.Ed.2d 220 (1980).[7]

By adopting the memorandum decision of the district court, the Fifth Circuit found no constitutional defect in excluding Dr. Shaw from membership on a hospital medical staff by reason of his status as a podiatrist. The Court declined to interfere in an area that traditionally has been the province of the medical profession and not ordinarily subject to governmental regulation. In light of *Shaw*, the Court must reject plaintiff's invitation to find that he has been deprived of a federal right in this instance.

■ The Court agrees with the private hospital and physician defendants that they are not liable under § 1983 even if plaintiff had been deprived of some federal right. It is established that private entities are subject to the Civil Rights laws only if their activities are significantly affected with state involvement:

> The district court correctly held that a private hospital is subject to the provisions of 42 U.S.C. § 1983 and the Fourteenth Amendment only if its activities are significantly affected with state involvement. Section 1983 and the Fourteenth Amendment do not preclude invidious discrimination by private parties. *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835, 841 (1883).

*Greco v. Orange Memorial Hospital Corporation*, 513 F.2d 873, 877–878 (5th Cir.), cert. denied, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975).

The mere existence of some government tie to a private organization is not sufficient to support a finding of state action where the state has not sufficiently involved itself in the invidious discrimination. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Moreover, the state must be involved in more than some activity of the offending institution itself, it must have been involved with the activity that caused the injury to plaintiff. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1979) ("[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." [8]); *New York Jaycees v. United States Jaycees*, 512 F.2d 856 (2d Cir. 1975). Accord, *Sims v. Jefferson Down*, 611 F.2d 609 (5th Cir. 1980).

■ Plaintiff's only reference to the state action nexus by the private hospital defendants is that these hospitals are licensed by state law.[9] "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth

---

**7.** Although this case arose as an action to remedy alleged due process and equal protection violations and was not brought pursuant to the civil rights laws, the Shaw court nonetheless found that Dr. Shaw suffered no violation of a federal right on facts nearly identical to those sub judice. The Court ruled that in the absence of a showing that the denial of staff privileges was not rationally based, or that it was precipitated by invidious racial discrimination, "it is not the province of this court to legislate the final resolution of a problem indigenous to the medical profession." Id. at 952.

There was also some indication given by plaintiff at his deposition that his cause of action really involved a due process and equal protection claim. See plaintiff's deposition at 52.

**8.** Id. 419 U.S. at 351, 95 S.Ct. at 453; also quoted in *Sims v. Jefferson Down*, infra at 611.

**9.** Paragraph 49 C of the Amended Complaint refers to Fla.Stat. Chap. 395 concerning Hospital Licensing and Regulation procedures for hospitals situated in this state.

Amendment." *Jackson v. Metropolitan Edison Co.*, supra at 350, 95 S.Ct. at 453.

Plaintiff's claims do not involve any racially discriminatory practices that might justify a more expansive approach to the issue. Based upon the state action allegations contained in the Amended Complaint, the private hospital and physician defendants are not subject to suit under § 1983 for their actions against the plaintiff, actions involving the administrative affairs of the hospitals.

> The policy of the Orange Memorial Hospital Corporation does not impinge upon the rights of a racial group seeking admittance and treatment, but rather affects primarily only the internal affairs of the facility. A secondary effect of the corporation's policy is admittedly to discriminate against persons seeking to obtain and physicians desiring to perform elective abortions. We feel, however, that the interest of the hospital in ordering its internal administrative affairs outweighs the interest of the people disadvantaged in this case.

*Greco*, supra at 880.

What involvement the state may have through its licensing procedures is not actionable unless these regulations somehow compelled the hospitals or physicians to act against plaintiff in an unlawful manner. *Waters v. St. Francis Hospital*, 618 F.2d 1105 (5th Cir. 1980). There is no allegation to this effect in the Amended Complaint.

(b) § 1985 allegations

Plaintiff has no claim under 42 U.S.C. § 1985(3)[10] since the Amended Complaint fails to contain any allegations that would show both the private deprivation of the enjoyment of the laws and an invidious class-based discriminatory motivation (usually, but not always, involving racial bias). *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977).[11]

Plaintiff has not alleged and the Court fails to discern any illegal conduct committed by the defendants in acting to deprive plaintiff of a position on the hospital medical staff.[12] Moreover, there has been no allegation of any racially motivated discrimination against plaintiff by the defendants. He alleges a class-based animus against him as a podiatrist. This discrimination is not actionable under the cases heretofore construing the reach of § 1985(3):

> Federal Courts have recognized that those who are discriminated against because of political views or associations fall with [sic] the protective scope of Section 1985(2) and (3). Courts have found a class-based animus sufficient to support causes of action where the conspiracy is directed toward supporters of a particular political candidate, *Cameron v. Brock*, 473

**10.** "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws. . . ." § 1985(1) and (2) are inapplicable.

**11.** This was an en banc decision in which the majority held that an employee discharged from private employment solely because he filed a petition in voluntary bankruptcy has no cause of action under 42 U.S.C. § 1985(3). The majority exhaustively analyzed the application of the statute by following the guidelines prescribed by the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29

L.Ed.2d 338 (1971). The Supreme Court in *Griffin* held that § 1985(3) reaches private conspiracies as well as those performed under color of state law and elucidated the necessary elements to successfully maintain a cause of action under this section. In its opinion, the Fifth Circuit expressly reserved decision on whether Congress intended only racial bias to activate the provisions of the statute but advised restraint when a court is confronted with class-based discrimination grounded in a nonracial animus. *McLellan*, supra at 929.

**12.** The Court excludes the Sherman Act count contained in the Amended Complaint which alleges an anti-competitive conspiracy on the part of the defendants. If plaintiff sustains these allegations with proof, a remedy is already provided for by that law. See 15 U.S.C. §§ 15 & 26.

F.2d 608 (6th Cir. 1973) and *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976); voters who were deceived about the actual effect of their vote, *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), cert. denied, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974); individuals critical of the President and his policies, *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); members of a group advocating an unpopular position, *Fuentes v. Sullivan*, 425 F.Supp. 249 (W.D.Tex.1977); laborers who are not members of a union, *Scott v. Moore*, 461 F.Supp. 224 (E.D.Tex.1978); members of the teaching profession who talk or associate with the CIA, *Selzer v. Berkowitz*, 459 F.Supp. 347 (E.D.N.Y. 1978); and students who exercise their first amendment rights by joining certain organizations. *Brown v. Villanova University*, 378 F.Supp. 342 (E.D.Pa.1974). *Kimble v. D. J. McDuffy, Inc.*, 623 F.2d 1060, 1067 (5th Cir. 1980) (rehearing *en banc* pending).

For these reasons, plaintiff's § 1985 claim cannot be sustained.

#### (c) § 1986 allegations

 No claim for relief will lie under 42 U.S.C. § 1986 [13] until a valid claim has been established under § 1985. *Hamilton v. Chaffin*, 506 F.2d 904 (5th Cir. 1975); *Zentgraf v. Texas A & M University*, 492 F.Supp. 265 (S.D.Tex.1980); *Shore v. Howard*, 414 F.Supp. 379 (N.D.Tex.1976). Plaintiff having established no § 1985 claim, the § 1986 claim must also be dismissed.

#### (d) Summary

Whether plaintiff couches his claims for relief under the rubric of due process, equal protection or the civil rights laws, the Amended Complaint alleging violations of plaintiff's civil rights must be dismissed for failure to state a claim upon which relief can be granted.

### V. CONCLUSION

After a thorough review of the applicable law, the Court concludes that plaintiff has no cognizable claim under either 42 U.S.C. §§ 1983, 1985 or 1986. The Court further concludes that it would be premature to dismiss the Amended Complaint as to the Sherman Act claim without permitting plaintiff an opportunity to conduct limited discovery and respond to the objections raised by the defendants, should they elect to renew them. Accordingly, it is

ORDERED AND ADJUDGED that the defendants' joint motion to dismiss is GRANTED in part and DENIED in part as follows:

(a) that portion of the Amended Complaint alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986 are hereby DISMISSED with prejudice;

(b) that portion of the Amended Complaint alleging violations of 15 U.S.C. §§ 1 and 2 presently meet the minimum jurisdictional requirements of the Sherman Act; and

(c) the remaining objections raised by the defendants to the Amended Complaint are hereby DENIED without prejudice to renew at a later date upon proper motion.

---

**13.** This section extends liability in damages to those persons "who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid in preventing the commission of the same, [neglect or refuse] so to do...."