Ralph J. MILLER, M.D.,

v.

INDIANA HOSPITAL, a corporation; Henry F. Hild; Donald F. Smith; William R. McMillen; John S. Simpson; Thomas S. Barbor; Samuel W. Jack, Jr.; Mrs. C. Fred Hildebrand; Mrs. Wanda M. Weyandt; Harry C. McCreary; C. Wilmer Johnston; George M. Evans; Donald S. Brody; Roger J. Reschini; Joseph Kovalchick; William G. Evans, M.D.; Melvin C. Williams, M.D.; Robert G. Goldstrohm, M.D.; David C. Hughes, M.D.; Ralph F. Waldo, M.D.; Herbert L. Hanna, M.D.; Richard N. Freda, M.D.; Frank Weiner, M.D.; Henry Mitchell, M.D.; Ralph R. Brown, M.D.; H. Arnold Muller, M.D.

Civ. A. No. 81–1091.

United States District Court,
W.D. Pennsylvania.

April 27, 1983.

Ralph H. Smith, III, Pittsburgh, Pa., for plaintiff.

Larry A. Silverman, Pittsburgh, Pa., for all defendants except Muller.

Alton P. Arnold, Jr., Deputy Atty. Gen., Pittsburgh, Pa., for Com. of Pa.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on a Motion for Judgment on the Pleadings[1] filed by Defendant Indiana Hospital and certain Defendant physicians and adminis-

1. The Motion for Judgment on the Pleadings has been amended once.

trators[2] at Indiana Hospital ("Hospital Defendants"). Also before the Court is a Motion to Dismiss filed by the Secretary of the Pennsylvania Department of Health, Dr. H. Arnold Muller ("Dr. Muller").[3] Plaintiff Dr. Ralph J. Miller brought this action as a result of Indiana Hospital's refusal to accept or consider his application for medical staff privileges. For the reasons set forth below, we are granting Defendants' Motions in part and are reserving judgment on the remainder.

## THE STANDARDS APPLICABLE TO DEFENDANTS' MOTIONS

■ A Motion to Dismiss filed pursuant to Fed.R.Civ.P. 12(b)[4] and a Motion for Judgment on the Pleadings filed pursuant to Fed.R.Civ.P. 12(c)[5] may, to a certain extent, be used interchangeably as pretrial challenges to an opponent's claim. *McIntosh v. Garofalo,* 367 F.Supp. 501, 503 (W.D. Pa.1973). *See also* C. Wright & A. Miller, 5 Federal Practice and Procedure § 1369, at 698 (1969).[6]

■ Theoretically, a Rule 12(b) motion focuses on the defects in Plaintiff's claim for relief and does not seek to determine the merits of the dispute.[7] *Id.* A Rule 12(c) motion, on the other hand, does seek to determine the substantive merits of the controversy. *Id.* As a practical matter, however, many of the same standards are applicable to both types of motions.

■ Both a Rule 12(b) motion and a 12(c) motion may be used to assert lack of subject matter jurisdiction or to assert the failure of Plaintiff to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) and (6); 12(h)(2) and (3).[8] *See also Cardio-Medical Assoc. v. Crozer-Chester Medical Center,* 536 F.Supp. 1065 (E.D.Pa. 1982); C. Wright and A. Miller, *supra* at 688. The same standards will apply to the resolution of each of these challenges regardless of which type of motion is used. *See Tomarkin v. Ward,* 534 F.Supp. 1224, 1228 n. 1 (S.D.N.Y.1982); *Warner Co. v. Brann & Stuart Co.,* 198 F.Supp. 634 (E.D. Pa.1961). *See also* C. Wright and A. Miller, *supra* at 688.

**2.** These individual Defendants are listed in the case caption. It is unnecessary to repeat their names here.

**3.** Plaintiff originally included the Commonwealth of Pennsylvania and the Pennsylvania Department of Health as Defendants in this action. Plaintiff subsequently amended his Complaint, with leave of Court, withdrawing the claims against the Commonwealth and the Department of Health as well as the claim for money damages against Dr. Muller. Plaintiff, however, continues to pursue his claim for injunctive relief against Dr. Muller. Therefore, the Motion to Dismiss originally filed by all three "Commonwealth" Defendants remains viable as to Dr. Muller.

**4.** Fed.R.Civ.P. 12(b) states in pertinent part:
Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall

be made before pleading if a further pleading is permitted.

**5.** Fed.R.Civ.P. 12(c) states in pertinent part:
After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

**6.** As a matter of procedure, a Rule 12(b) motion is filed as a response to a claim before pleading, if further pleading is permitted. Fed. R.Civ.P. 12(b). A Rule 12(c) motion may be filed only after the pleadings are closed. Fed. R.Civ.P. 12(c); C. Wright & A. Miller, *supra* at 698.

**7.** We question the theory that a Rule 12(b) motion is not directed to the merits of a dispute. It appears as though most courts treat at least a Rule 12(b)(6) motion as one which addresses or resolves the merits of an action.

**8.** Fed.R.Civ.P. 12(h) states in pertinent part:
(2) A defense of failure to state a claim upon which relief can be granted ... may be made ... by motion for judgment on the pleadings ...
(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

■ Dismissal on jurisdictional grounds and for failure to state a claim are analytically distinct, implicating different legal principles and different burdens of proof. *Johnsrud v. Carter,* 620 F.2d 29, 32 (3d Cir.1980). The former involves the right to be heard in court while the latter is a disposition of the case on the merits. *Id.* at 33.

■ Motions which challenge subject matter jurisdiction may simply attack the facial sufficiency of the Complaint or they may attack the factual existence of subject matter jurisdiction.[9] *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). In a facial attack, the Court must take the allegations of the Complaint as true.[10] *Id.* Where, however, the Motion creates a factual issue regarding subject matter jurisdiction, " 'no presumptive truthfulness attaches to Plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. Moreover, the Plaintiff will have the burden of proof that jurisdiction does in fact exist.' "[11] *Enka B.V. of Arnhem, Holland v. E.I. DuPont Nemours & Co.,* 519 F.Supp. 356, 359 (D.Del.1981), quoting *Mortensen, supra* at 891.

■ Where a motion asserts the failure of Plaintiff to state a claim, the burden is on the moving party. *See Johnsrud v. Carter, supra* at 33. The Plaintiff is afforded the safeguard of having all of his allegations taken as true and all inferences which are favorable to him will be drawn. *Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980); *Mortensen, supra* at 891. If the court considers matters outside of the pleadings, the motion is transformed into a Rule 56 Motion for Summary Judgment. *See* Fed.R. Civ.P. 12(b) and 12(c).[12]

Specifically with regard to a Rule 12(c) motion, we note the following:

Under the orthodox rule, a motion for judgment on the pleadings must be sustained by the undisputed facts appearing in all the pleadings, supplemented by any facts of which the court will take judicial notice. For the purposes of the motion, all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. Conclusions of law are not deemed admitted. Judgment on the pleadings may be granted only if, on the

**9.** We set forth the standard applicable to a jurisdictional challenge since the Hospital Defendants have controverted subject matter jurisdiction under the federal antitrust laws. The other assertions made by Defendants raise the question of whether Plaintiff has stated a claim rather than the question of subject matter jurisdiction.

**10.** Note, however, that the Plaintiff carries throughout the litigation the burden of showing that he is properly in court. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

**11.** If the Plaintiff's allegations of jurisdictional facts are challenged in any appropriate manner, he must support them by competent proof. *Id.* The trial court may inquire, by affidavits or otherwise, into the facts as they exist. *Wetmore v. Rymer,* 169 U.S. 115, 120–121, 18 S.Ct. 293, 295, 42 L.Ed. 682 (1898). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Gibbs v. Buck,* 307 U.S.

66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939).

**12.** Rule 12(b) states in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 12(c) states in pertinent part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

facts as so admitted, the moving party is clearly entitled to judgment.

536 F.Supp. at 1070, quoting 2A Moore's Federal Practice ¶ 12.15, at 2343–44 (1981) (footnotes omitted).

■ As a general rule, courts do not favor the summary disposition of cases on their merits. Indeed, the United States Supreme Court has stated that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Nevertheless, in an appropriate case, an early disposition may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial. At minimum, a partial disposition of the case at any early stage will refine the issues which remain for later resolution.

## FACTUAL BACKGROUND

With the above standards in mind, the facts may be summarized as follows:

Plaintiff is a physician and surgeon duly licensed by the Commonwealth of Pennsylvania. He is a Board-certified urologist.[13] Plaintiff was a member of Indiana Hospital's medical staff for approximately 19 years. He remains a resident of Indiana County, Pennsylvania.

Defendant Indiana Hospital is a general hospital and a non-profit corporation. It is located in Indiana County, Pennsylvania and is the only general hospital in that county.[14]

The 24 individual Hospital Defendants are or were administrators or physicians at the Hospital. Twenty of these Defendants are or were members of the Hospital's Governing Board or the Executive Committee of the medical staff during the events in question. One of these Defendants, William R. McMillen, is or was a Commissioner of Indiana County as well.

Defendant Dr. Muller is the Secretary of the Pennsylvania Department of Health with offices in Harrisburg, Pennsylvania.

Plaintiff was first granted staff privileges at Indiana Hospital in 1958. Every subsequent year he applied for and was granted staff privileges for a period of one year.[15]

In 1974 and 1975, Plaintiff became active in the design and creation of the Medical Center.[16] Further, Plaintiff openly criticized certain conditions at the Hospital.[17] Those conditions allegedly went unremedied.

According to Plaintiff, the Hospital and certain individual Hospital Defendants objected strenuously to the creation of the Medical Center and to Plaintiff's criticism of Hospital conditions.[18]

**13.** The Complaint does not indicate whether Plaintiff continues to practice his specialty or even whether Plaintiff continues to practice medicine. Plaintiff's counsel indicated at oral argument that Plaintiff has been totally foreclosed from practicing urological surgery which, according to Plaintiff's counsel, is Plaintiff's "sub-specialty." Counsel for the Hospital Defendants suggested at oral argument that Plaintiff continues to practice his specialty of urology. Again, the *pleadings* provide little, if any, information concerning Plaintiff's current practice or occupation.

**14.** Plaintiff has alleged that a medical center also exists in Indiana County but has provided little information concerning the nature and scope of its services. The Complaint does suggest that the Indiana County Medical Center ("Medical Center") provides outpatient care (Compl. para. 15) and at oral argument, Plain-

tiff's counsel mentioned that the Medical Center, or the idea behind the Medical Center, was to serve those who do not require hospitalization.

**15.** Staff privileges at Indiana Hospital are granted for an annual period beginning January 1 of each year.

**16.** The Medical Center was built in 1975.

**17.** Plaintiff does not specify a date or time period for this occurrence.

**18.** Plaintiff implies, without saying, that it was his participation in the creation of the Medical Center as well as his criticism of Hospital conditions which triggered the events that followed.

In February 1977, a patient who had been under Plaintiff's care died at the Hospital.[19] One of the members of the medical staff's Executive Committee, who is a Defendant here, sent a report to the president of the medical staff stating that Plaintiff had rendered unacceptable care to the deceased patient. He later sent another letter to the Executive Committee, citing additional instances of inadequate care rendered by Plaintiff and requesting that Plaintiff's staff privileges be suspended. The Executive Committee held an informal meeting which Plaintiff attended. Plaintiff, however, refused to discuss the allegations against him and abruptly left the meeting.

In March 1977, the Executive Committee notified Plaintiff in writing that it intended to recommend to the Hospital's Board of Directors that Plaintiff's active staff privileges be revoked. The Executive Committee, through its hearing committee, held a hearing at which Plaintiff was represented by counsel and had the opportunity to present and cross-examine witnesses. The hearing committee recommended the revocation of Plaintiff's staff privileges. The Executive Committee adopted the recommendation and Plaintiff appealed to the Hospital's Board of Directors. After another adversary hearing, a committee of four directors affirmed the Executive Committee's decision and the full Board adopted their recommendation.

In October 1977, Plaintiff obtained a preliminary injunction *ex parte* from the Court of Common Pleas of Indiana County, preventing the revocation of his privileges. This injunction was dissolved in February 1978 and a request for a permanent injunction was denied in June 1978.

Plaintiff appealed the denial of his request to the Superior Court of Pennsylvania. In April 1980, that court affirmed the lower court's decree, finding that the charges against Plaintiff were supported by "sufficient evidence." The Superior Court further determined that Plaintiff was dismissed in a "fair and impartial manner" which was in accordance with the Hospital's bylaws. In October 1980, Plaintiff's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied.

During the state court proceedings, Plaintiff continued to exercise his medical staff privileges. In September 1977, however, he submitted his application for 1978 staff privileges which the Hospital [20] refused to consider.[21]

In December 1978, Plaintiff applied for medical staff privileges for the year 1979. The Hospital refused to process the application.

In October 1980, Plaintiff requested, and was denied, the application forms from the Hospital in order to apply for 1981 staff privileges.

In December 1980, Plaintiff petitioned the Pennsylvania Department of Health for an order directing Indiana Hospital to supply him with an application for medical staff privileges as well as an order directing Indiana Hospital and its officers to process the application.

Plaintiff's petition was treated by the Department of Health as a formal complaint. A copy of the petition was sent to Indiana Hospital for a response.

The president of the Hospital sent a letter to Plaintiff advising him that the Hospital would not accept an application for 1981 staff privileges from him based upon the

19. This information as well as that which immediately follows is set forth in *Miller v. Indiana Hospital,* 277 Pa.Super.Ct. 370, 419 A.2d 1191 (1980), of which we may take judicial notice. *See Lamar v. Micou,* 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885); *Saffold v. McGraw-Edison Co.,* 566 F.2d 621, 623 (8th Cir.1977); *Meyer v. Lavelle,* 389 F.Supp. 972, 975 (E.D.Pa.1975).

20. Specifically, Plaintiff alleges that the Defendant Hospital and its president, the Executive Committee and the members of the Governing Board refused to process his application.

21. The Hospital Defendants allege that consideration of the application was suspended pending resolution of the state court litigation. It appears from the Complaint that Plaintiff therefore exercised his staff privileges through at least a portion of 1978.

outcome of the state litigation. A copy was sent to the Department of Health.

Subsequently, the Hospital's counsel sent a copy of the bylaws to the Department of Health and reiterated the Hospital's position that it was not required to provide Plaintiff with an application.

By letter dated December 31, 1980, the Department of Health notified Plaintiff of its determination to take no further action on the matter. Specifically, the Department stated that neither its regulations nor the Hospital's bylaws required the Hospital to provide him with an application. It also noted that the Department of Health does not enforce federal regulations "for those hospitals accredited by the Joint Commission on Accreditation of Hospitals."

Plaintiff apparently took issue with the fact that the letter from the Hospital's attorney was sent to the Department of Health without a copy also being sent to him. He sent a letter dated January 5, 1981 to the Secretary of the Department of Health concerning the matter and also requested that the Department withdraw its determination with regard to his petition.

By letter dated January 21, 1981, the Department notified Plaintiff that upon reviewing his original petition as well as its regulations and the Hospital's bylaws, it remained its determination that the Hospital had no obligation to furnish him with an application for staff privileges. Again, the Department of Health decided that it would take no action on the matter.

### THE COMPLAINT

Plaintiff filed the present action on July 2, 1981 pursuant to the Fifth and Fourteenth Amendments to the United States Constitution (Count I); the civil rights statutes, 42 U.S.C. §§ 1983 and 1985 (Count I); the federal antitrust laws (Count II) as well as the state antitrust laws (Count III). Plaintiff predicates jurisdiction upon 28 U.S.C. §§ 1331 and 1343 for his federal claims.[22] Plaintiff's state claims are based upon the doctrines of ancillary and pendent jurisdiction.[23]

We have carefully reviewed the Complaint and have found many difficulties attendant thereto.

■ The Complaint, primarily in Count I, is unclear as to other claims possibly being asserted by Plaintiff. For example, in paragraph 17 of the Complaint, Plaintiff alleges interference with prospective advantage (para. 17(f)), intentional affliction of mental distress (para. 17(g)), defamation (para. 17(h)) and invasion of privacy (para. 17(h)). The pleadings and briefs do not disclose whether or not these allegations are considered separate legal claims. If Plaintiff wishes to retain these allegations as viable legal claims,[24] he must amend his Complaint, setting each claim out as a separate count and setting forth the allegations

---

**22.** 28 U.S.C. § 1331 states:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 28 U.S.C. § 1343 states in pertinent part:
 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
 (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

**23.** *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Rogers v. Aetna Cas. and Sur. Co.,* 601 F.2d 840, 843 n. 4 (5th Cir.1979).

**24.** Presumably, such claims are based, or would be based, upon pendent jurisdiction.

in support thereof with some degree of specificity.[25]

Plaintiff also alleges interference with contractual relations in the same count. The inclusion of this allegation is puzzling. If Plaintiff is referring to the revocation of his staff privileges, the allegation does not belong in this Complaint. Our understanding of Plaintiff's case, based upon our reading of the entire Complaint and the representations of Plaintiff's counsel at oral argument, is that he is contesting the refusal to accept or process his application. Any attempt to relitigate the revocation of staff privileges is barred by the doctrine of *res judicata*. *See* discussion *infra*. Thus, Plaintiff may include in this Complaint only those claims which pertain to the refusal to accept or process his application.[26]

In paragraph 20 of the Complaint, Plaintiff alleges that the Hospital's bylaws have been amended to grant every applicant for admission or renewal of admission "both a fair trial and due process of law procedure before making a determination to grant or refuse the same." In paragraph 25 of the Complaint, Plaintiff alleges a violation of a Pennsylvania statute, 2 Pa.C.S.A. § 504.[27] In paragraph 26 of the Complaint, Plaintiff alleges a violation of regulations promulgated by the U.S. Department of Health and Human Services, 42 C.F.R. §§ 405.1020 *et seq.*

■ It is not clear whether Plaintiff intends any of these allegations to be separate claims in his suit. If he does intend these allegations to be separate claims, the claims must be set out in separate counts of the Complaint with specific supporting allegations set forth therein. With respect to the bylaws and the federal regulations, Plaintiff must state the precise section or sections which he alleges to have been violated and must explain the manner in which the violation has occurred. A copy of the bylaws should also be appended to the Complaint.

■ Plaintiff further alleges that Defendants have violated the rules and regulations of the Joint Commission on Accreditation of Hospitals ("JCAH") (para. 34). Our instructions with regard to Plaintiff's other allegations apply equally well here. Even more importantly, however, Plaintiff must first show the basis for this Court's jurisdiction over these rules. In other words, Plaintiff must state whether jurisdiction for this claim is predicated upon federal question jurisdiction[28] or upon pendent jurisdiction and must allege facts to support the alleged jurisdiction.[29]

Count II of the Complaint is drawn more precisely than count I. Nevertheless, count II is unclear in several respects. Specifically, it is difficult to discern which Defendants are included in count II.

It appears that Dr. Muller was not made part of count II. Indeed, we question whether the Secretary of the Pennsylvania Department of Health *could* be made part of the federal antitrust count in light of the antitrust exemption for state agencies and state officials in certain circumstances. *See*

---

**25.** We require Plaintiff to amend his Complaint if he wishes to pursue these claims, not only for this Court's elucidation but also to put Defendants on fair notice as to the claims and allegations against them.

**26.** We also note in this regard that in order for this Court to exercise pendent jurisdiction, all of Plaintiff's state and federal claims "must derive from a common nucleus of operative fact" such that Plaintiff "would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138.

**27.** 2 Pa.C.S.A. § 504 states:
No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of

a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

**28.** 28 U.S.C. § 1331.

**29.** For example, if predicating jurisdiction upon 28 U.S.C. § 1331, Plaintiff must demonstrate that the JCAH's rules and regulations were formulated pursuant to a specific grant of federal statutory authority and promulgated in accordance with the procedural requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–53 (1976). *See Chasse v. Chasen,* 595 F.2d 59, 61 (1st Cir.1979).

*Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[30] Furthermore, we question whether Dr. Muller's activities have a substantial effect on interstate commerce as required by the Sherman Act. *See McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). Certainly, no facts to establish this prerequisite have been alleged.[31]

▇▇▇ Regardless, Plaintiff should amend his Complaint to clarify which Defendants are the subject of count II [32] and which are not.[33]

▇▇▇ Plaintiff's allegations as to a conspiracy to monopolize are also unclear. In paragraph 45, Plaintiff refers to a conspiracy "to further a monopoly of hospital *facilities* (emphasis added)." In paragraph 48, Plaintiff alleges a conspiracy "to monopolize the field of hospital related *services* (emphasis added)." Plaintiff should clarify which monopoly he is alleging or whether he is alleging both.[34]

Finally, Plaintiff must amend paragraph 42 of his Complaint. Plaintiff alleges violations of §§ 1 and 2 of the Sherman Act and seeks relief pursuant to §§ 4, 15, 16 and 26 of the Clayton Act. Section 15 of the Clayton Act, 15 U.S.C. § 25, however, only applies to suits by the federal government. Therefore, that provision is not applicable to the instant case. Furthermore, it is not clear how § 26 of the Clayton Act, 15 U.S.C. § 27 ("Effect of Partial Invalidity") provides a basis for relief. We expect that

an amendment will cure any such problems with this paragraph of the Complaint.

## RES JUDICATA

The Hospital Defendants rely heavily upon the doctrines of *res judicata* and collateral estoppel as "threshold" defenses to Plaintiff's action.[35] Collateral estoppel will be discussed *infra* with respect to the issue of "state" or "government" action. As regards *res judicata,* the Hospital Defendants contend that the judgment of the Pennsylvania Superior Court precludes the Plaintiff from pursuing the instant action in this Court.

Plaintiff responds that Defendants did not affirmatively plead *res judicata* and therefore waived this defense. Plaintiff further alleges that *res judicata* may not be applied here because the facts giving rise to this action differ from those which gave rise to the state court litigation.

▇▇▇ Federal courts must give *res judicata* or "preclusive" effect to state court judgments whenever the courts of that state would do so. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *New Jersey-Philadelphia Presbytery v. New Jersey Bd. of Higher Educ.,* 654 F.2d 868, 876 (3d Cir.1981).

Indeed, Congress has expressly commanded that "(t)he ... judicial proceedings (of any court of any ... State) ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State

---

**30.** *See also Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

**31.** We also note that Plaintiff's two amendments to his Complaint do not mention the federal antitrust laws with respect to Dr. Muller. Indeed, the second amendment to the Complaint only mentions 42 U.S.C. § 1983 when referring to Dr. Muller.

**32.** Further, in count II, Plaintiff mentions "unnamed co-conspirators (para. 45)." Plaintiff must name alleged co-conspirators if he knows their identities. If he does not know their iden-

tities but has reason to believe such persons exist, Plaintiff should expressly so state.

**33.** Parts of count I are inflicted with the same problem. In this regard, many of the possible "pendent" legal claims do not seem to pertain to Dr. Muller. If Plaintiff wishes to retain any of these claims, he must clarify which Defendants are included in each claim.

**34.** We question whether Plaintiff even has standing to challenge a conspiracy to monopolize hospital facilities.

**35.** Dr. Muller also alleges the defense of collateral estoppel in his Motion to Dismiss. He does not, however, allege *res judicata.*

. . . from which they are taken." 28 U.S.C. § 1738.[36]

■ *Res judicata*, although an affirmative defense,[37] may be pleaded in an answer or raised in a Motion to Dismiss. *Mack v. Municipality of Penn Hills*, 547 F.Supp. 863, 867 n. 9 (W.D.Pa.1982). *See also Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir.1964).

Under Pennsylvania law, for *res judicata* to apply, it is necessary that "between the previous action and the present action there (is) an identity in the thing sued on, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued." *Davis v. United States Steel Supply*, 688 F.2d 166, 170–171 (3d Cir.1982), quoting *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 105, 415 A.2d 53, 55 (1980).

■ *Res judicata* does not require identity between specific legal theories or claims. Rather, application of the doctrine is generally "thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply*, *supra* at 171.[38]

■ In the case at bar, the Hospital Defendants did not expressly state in their Answer that they were raising "*res judicata*" as a defense. Nevertheless, the state court litigation was mentioned at several places in their Answer. Indeed, their "Second Defense" was specifically limited to a discussion of the state court litigation. Further, Defendants amended their Motion for Judgment on the Pleadings to specifically aver the defense of *res judicata*. Moreover, Plaintiff had ample opportunity to respond to the *res judicata* defense as shown by the discussion on the subject in his brief and at oral argument.

Therefore, we do not believe that Defendants have waived this defense.

■ We are troubled, however, by the factual differences between the litigation in this Court and that in the state court.

The state court proceedings involved the revocation of existing staff privileges in 1977. The instant case involves the refusal to process, or even accept, Plaintiff's applications for new staff privileges for 1978, 1979, 1980 and 1981.

Plaintiff alleges in the present case that he has a right to receive an application and to have his applications considered; he alleges that the refusal of the Hospital Defendants to do either is wrongful. In the state court proceedings, Plaintiff alleged that the revocation of his staff privileges was conducted in a wrongful manner. Thus, the acts complained of are distinguishable. *See Williamson v. Columbia Gas & Electric Corp.*, *supra* at 470.

Further, the Hospital Defendants agree that medical staff privileges at Indiana Hospital "are granted for an annual period beginning January 1 of each year." Hospital Defendants' Answer, para. 4. This fact serves to further distinguish the revocation of existing staff privileges from the consideration of an application for new staff privileges.

Moreover, the relief sought by Plaintiff in the two proceedings differs, at least in part. In the instant case, Plaintiff seeks, *inter alia*, money damages[39] from the Hospital Defendants for their refusal to accept or process his applications for 1978, 1979, 1980 and 1981 staff privileges. In the state court litigation, Plaintiff sought only injunctive relief. *Miller v. Indiana Hospital*, 277 Pa.Super.Ct. 370, 419 A.2d 1191 (1980). *See also Williamson v. Columbia Gas & Electric Co.*, *supra* at 470.

---

**36.** This statute has existed virtually unchanged since 1790. 449 U.S. at 96 n. 8, 101 S.Ct. at 416 n. 8.

**37.** *See* Fed.R.Civ.P. 8(c).

**38.** For example, a court may inquire into whether the acts complained of and the de-

mand for recovery are the same. *See William-son v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 470 (3d Cir.1950).

**39.** Plaintiff seeks treble damages under his federal antitrust count as well as damages under his civil rights count.

In light of the standard applicable to a Motion for Judgment on the Pleadings,[40] we feel that any doubts on the issue of *res judicata* should be resolved in favor of the non-moving party. Since we have sufficient doubts as to the applicability of the defense, particularly where there are discernible differences between the facts underlying the state court litigation and those giving rise to the instant case, this issue shall be resolved in favor of Plaintiff.[41]

Thus, the doctrine of *res judicata* does not bar the instant action.

We turn now to Defendants' contentions with respect to each of Plaintiff's major claims. We will consider the challenges to each claim separately and will resolve them accordingly.

## I. THE CONSTITUTIONAL CLAIMS

Defendants have moved to dismiss Plaintiff's civil rights claims set forth in count I of his Complaint. To the extent that Plaintiff's civil rights claims are predicated upon the Fifth and Fourteenth Amendments to the U.S. Constitution, we address them here.[42]

It is not clear that the Fourteenth Amendment authorizes a direct cause of action for damages. *See Gagliardi v. Flint,* 564 F.2d 112, 117–26 (3d Cir.1977) (Gibbons, J., concurring) (there is such a cause of action), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). *But see Mahone v. Waddle,* 564 F.2d 1018, 1052–61 (3d Cir.1977) (Garth, J., dissenting in part and concurring in part) (there is no such cause of action), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). Regardless, we need not decide that question because Plaintiff has alleged a claim under 42 U.S.C. § 1983.

■ Section 1983 provides a cause of action for violations of federal rights by local government bodies and state officials. Thus, § 1983 essentially subsumes claims under the Fourteenth Amendment. Since Plaintiff has "an effective and substantial federal statutory remedy" under § 1983, it is unnecessary to imply a remedy directly under the Fourteenth Amendment on his behalf. *See Rogin v. Bensalem Township,* 616 F.2d 680, 685–87 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

■ It is well established that an action for damages can be maintained directly under the Fifth Amendment.[43] *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

---

**40.** *See* discussion *infra.*

**41.** We also note that it is not at all clear that the federal antitrust allegations could have been raised, or at least sustained, in the case before the Pennsylvania Superior Court. *See Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 587 (3d Cir.1975); 18 C. Wright & A. Miller, Federal Practice and Procedure § 4406, at 45 (1981).

**42.** It is not clear to us that Plaintiff intended to assert claims directly under the Fifth and Fourteenth Amendments. The parties' briefs and oral argument focus upon the civil rights statutes. Nonetheless, since Plaintiff did mention the Fifth and Fourteenth Amendments in count I (paragraphs 7 and 36) of his Complaint and since Defendants did move to dismiss count I, we will discuss the "constitutional claims." Plaintiff's claims based upon the civil rights statutes, 42 U.S.C. §§ 1983 and 1985, are discussed in separate sections of this Opinion.

We note further that Dr. Muller, the Secretary of the Pennsylvania Department of Health, does not appear to be part of the Fifth Amendment claim, assuming that such a claim exists. Indeed, we doubt that Dr. Muller could be made part of a Fifth Amendment claim since it is unlikely that his actions could be considered those of the federal government. Therefore, we will discuss the Fifth Amendment claim only with reference to the Hospital Defendants.

**43.** The Fifth Amendment provides in pertinent part: "No person shall be ... deprived of life, liberty, or property, without due process of law...".

Although the Fifth Amendment contains no equal protection clause, the United States Supreme Court has held that "the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Rostker v. Goldberg,* 453 U.S. 57, 89 n. 6, 101 S.Ct. 2646, 2664 n. 6, 69 L.Ed.2d 478 (1981) (Marshall, J., dissenting opinion), quoting *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 (1975).

It is axiomatic that the strictures of the Fifth Amendment apply only to the actions of the federal government and not to those of private persons. *Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). As well, the Fourteenth Amendment due process clause applies to the actions of the states. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1973).

The standards used to determine whether conduct is federal action subject to the Fifth Amendment are identical to those used to determine whether conduct is state action subject to the Fourteenth Amendment. *Warren v. Government Nat'l Mortgage Ass'n,* 611 F.2d 1229, 1232 (8th Cir.1980), *cert. denied,* 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980). While, however, the tests [44] are the same, the actual facts pertinent to each are different. For example, extensive government funding is a factor which is pertinent to both a Fifth Amendment and a Fourteenth Amendment claim. Funding by the federal government, however, is only relevant to a claim under the Fifth Amendment.[45] Funding by the state government is only pertinent to a claim under the Fourteenth Amendment or § 1983. *See generally Fischer v. Driscoll,* 546 F.Supp. 861, 866–67 (E.D.Pa.1981).

[28] Thus, for purposes of Plaintiff's Fifth Amendment claim, we shall examine the facts allegedly showing that the Defendants' conduct is that of the federal government in light of the tests articulated by the Supreme Court.[46] These tests were summarized in a recent Opinion of this Court, *Nguyen v. United States Catholic Conference,* 548 F.Supp. 1333 (W.D.Pa. 1982):

## A. THE "SYMBIOTIC RELATIONSHIP" TEST

Under the "symbiotic relationship" test articulated by the Court in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), government action may be found where "(t)he (government) has so far insinuated itself into a position of interdependence with . . . (the Defendants) that it must be recognized as a joint participant in the challenged activity . . .". *Id.* at 725, 81 S.Ct. at 862.[47]

Cases decided by the United States Court of Appeals for the Third Circuit have emphasized that under *Burton,* a "symbiotic relationship" may be established by showing the government's extensive involvement and interdependence with the private party. *See, e.g., Hollenbaugh v. Carnegie Free Library,* 545 F.2d 382, 385

---

44. The tests developed by the U.S. Supreme Court which may be used to determine the existence of "government" action, be it state or federal, are the "symbiotic relationship" test, the "nexus" test and the "public function" test. *Nguyen v. United States Catholic Conference,* 548 F.Supp. 1333 (W.D.Pa.1982).

45. There may be an exception, however, where the state is responsible for allocating or disbursing the federal monies.

46. In the instant case, the Pennsylvania Superior Court found that Indiana Hospital's conduct was not state action for purposes of the Fourteenth Amendment. *See Miller v. Indiana Hosp.,* 277 Pa.Super.Ct. 370, 419 A.2d 1191 (1980). Such a finding has preclusive effect with respect to that specific issue in the action before this Court under the doctrine of collateral estoppel. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In other

words, its preclusive effect is only relevant to a Fourteenth Amendment or a § 1983 claim.

47. In *Burton v. Wilmington Parking Authority, supra,* a restaurant located in a publicly-owned parking facility refused service to a black. The Court found sufficient state action so as to invoke the Fourteenth Amendment where the land and building housing the restaurant were publicly-owned, rent from the restaurant contributed to the support of the garage while most of the remaining maintenance costs were financed by the public, the building was devoted to a public use and most importantly, the particular relationship between the restaurant and the garage conferred mutual benefit on both. *Id.* 365 U.S. at 723–724, 81 S.Ct. at 860–61. Thus, the State effectively not only made itself a party to the restaurant's discriminatory act, but "elected to place its power, property and prestige behind the admitted discrimination." *Id.* at 725, 81 S.Ct. at 862.

(3d Cir.1976), *cert. denied,* 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978). The dispositive factor in *Burton* with respect to the government action issue was the "extent and nature of the overall relationship between the (government) and the private enterprise." *Braden v. University of Pittsburgh,* 552 F.2d 948, 957 (3d Cir.1977). The establishment of an "inextricably-linked relationship [48] renders the government a joint participant in the challenged activity, obviating the need for the Plaintiff to show state involvement in the specific action being challenged.[49] *Hollenbaugh v. Carnegie Free Library, supra* at 385.

 The facts presented before us do not establish federal action under the *Burton* test.

There is no allegation that any employee or officer of Indiana Hospital is appointed by the federal government. *Cf. Hollenbaugh v. Carnegie Free Library, supra* at 385 (A majority of the Defendants' trustees were appointable by government bodies). There is also no evidence that Indiana Hospital is located in a building or buildings owned by the federal government.[50] *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972). *Burton v. Wilmington Parking Authority, supra* 365 U.S. at 723–724, 81 S.Ct. at 861.

Plaintiff alleges that Indiana Hospital is subject to federal regulation. Specifically,

certain regulations promulgated by the U.S. Department of Health and Human Services apply to the Hospital by virtue of its receipt of federal funds. Compl. para. 21(g), 26 and 28. We do not believe that this allegation, even if proven, indicates that Indiana Hospital is subject to pervasive federal regulation.[51]

Plaintiff alleges that Indiana Hospital has received federal funds under the Hill-Burton Act. The receipt of Hill-Burton funds is government involvement on a general level rather than the extensive interdependence required under the "symbiotic relationship" test for a finding of government action. *See Cardio-Medical Assoc. v. Crozer-Chester Medical Center,* 536 F.Supp. 1065, 1092 (E.D.Pa.1982).[52]

Plaintiff alleges that Indiana Hospital receives Medicare and Medicaid funds from the federal government. The Medicare funds constitute 35% of the Hospital's annual income (Compl. para. 21(d)) and the Medicaid funds represent 6.5% of its annual income (Compl. para. 21(e)). Clearly it cannot be said that the Hospital derives most of its revenue from the federal government. *Cf. Chalfant v. Wilmington Institute, supra* at 745 (Defendant derived over 90 percent of its revenues from the government). Moreover, "'receipt of money from the (government) is not, without a good deal more, enough to make the recipient an agency or instrumentality of the (g)overnment.'"[53] *Hollenbaugh v. Carnegie Free*

---

**48.** *Braden v. University of Pittsburgh, supra* at 958.

**49.** The "nexus" test set forth in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), should be applied only if the requisite state involvement and interdependence is not found under the *Burton* test. *Chalfant v. Wilmington Institute,* 574 F.2d 739, 745–746 (3d Cir.1978).

**50.** The fact that the Hospital has received construction grants from the federal government (Compl. para. 21(f)) does not make its buildings publicly-owned.

**51.** Moreover, heavy governmental regulation, standing alone, does not give rise to a *Burton* "symbiotic relationship" so as to warrant a finding of government action. *See Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589,

594–96 (3d Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980). Most courts have found that hospitals subject to extensive state or federal regulations do not, as a result, act under color of state law for purposes of § 1983. *See Cardio-Medical Assoc. v. Crozer-Chester Medical Center, supra* at 1093 and the cases cited therein.

**52.** Most courts have held that a hospital's receipt of Hill-Burton funds does not convert all of its acts into actions taken under color of state law for purposes of § 1983. *See Cardio-Medical Assoc. v. Crozer-Chester Medical Center, supra* at 1092 and the cases cited therein.

**53.** Most courts have held that a hospital's receipt of Medicare and Medicaid funds does not convert all of its acts into actions taken under color of state law. *Id.* at 1094 and the cases cited therein.

*Library, supra* at 385, quoting *Grossner v. Trustees of Columbia Univ.*, 287 F.Supp. 535, 547–548 (S.D.N.Y.1968).

Finally, Plaintiff alleges that Indiana Hospital is subject to the standards of the Professional Standards Review Organization, "a judicially determined agency of the United States." Compl. para. 21(x).[54] Plaintiff also alleges that the Hospital participates in Champus, a federally-funded program for members of the armed services. Compl. para. 21(bb). Plaintiff further alleges that the Hospital is exempt from paying federal income tax.[55] None of these allegations, either alone or in conjunction with Plaintiff's other allegations, are sufficient to show the extensive interdependence and involvement with the federal government required under the *Burton* test.

Thus, given the allegations before us, we cannot find that a "symbiotic relationship" exists between the Hospital Defendants[56] and the government such as existed in *Burton*.[57]

### B. THE "NEXUS" TEST

Under the "nexus" test established by the Court in *Jackson v. Metropolitan Edison Co., supra*, government action may be found if "there is a sufficiently close nexus between the (government) and the challenged action of the regulated entity so that the action of the latter may be fairly

treated as that of the (government) itself." *Id.* 419 U.S. at 351, 95 S.Ct. at 453.[58]

Under *Jackson*, the Plaintiff must show that the government is so involved in the specific act at issue that it has effectively placed its imprimatur on that act or put its weight behind it. *See Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 357, 95 S.Ct. at 456; *Fitzgerald v. Mountain Laurel Racing, Inc., supra*, at 597. The government's mere acquiescence or approval of the private action does not convert the act into that of the government. *See Blum v. Yaretsky*, —— U.S. ——, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). *See also Flagg Bros. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 357, 95 S.Ct. at 456.

Thus, the government can be held responsible for the private act only when it has compelled the act by law[59] or when it has "provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the (government)." *Blum v. Yaretsky, supra*, —— U.S. at ——, 102 S.Ct. at 2785.

We can perceive no basis in the case at bar for finding a nexus between the federal government and the failure to accept or process Plaintiff's applications for medical staff privileges. Specifically, the

---

**54.** Plaintiff does not describe this alleged federal "agency" with any detail nor does Plaintiff state whether this agency's standards are federal rules and regulations formulated pursuant to a specific grant of federal statutory authority and promulgated in accordance with the APA. *See* n. 29 *infra*.

**55.** Most courts have held that a hospital's tax exempt status does not convert its actions into actions taken under color of state law for purposes of 42 U.S.C. § 1983.

**56.** Plaintiff alleges no facts *directly* connecting the individual Hospital Defendants with the federal government. We presume he intends to rely, for the individual Defendants, on the allegations already discussed.

**57.** Plaintiff's allegation of the Hospital's monopolistic status in Indiana County is not relevant to the question of federal action. *See* Compl. para. 21(b). Even if it were relevant,

such status does not transform the Hospital's actions into those of the federal government.

**58.** A close nexus between the government and the challenged private action may be sufficient to warrant a finding of federal action even if a *Burton* "symbiotic relationship" is absent. *See Fitzgerald v. Mountain Laurel Racing, Inc., supra* at 596–597.

**59.** *Flagg Bros. v. Brooks, supra* 436 U.S. at 164, 98 S.Ct. at 1737. *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970). The Court in *Adickes* noted that " '(w)hen the State has commanded a particular result, it has saved to itself the power to determine that result and thereby to a significant extent has become involved in it.' " *Id.*, quoting *Peterson v. City of Greenville*, 373 U.S. 244, 248, 83 S.Ct. 1119, 1121, 10 L.Ed.2d 323 (1963).

pleadings are devoid of allegations to support an inference that the federal government compelled or provided significant encouragement to Indiana Hospital's actions.[60]

Thus, we can find no federal government action under the *Jackson* "nexus" test.

### C. THE "PUBLIC FUNCTION" TEST

██ Finally, under the "public function" test discussed by the Court in the recent case of *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and also in the earlier case of *Jackson v. Metropolitan Edison Co., supra,* government action may be present where the function performed by the private entity is " 'traditionally the exclusive prerogative of the State.' " *Rendell-Baker v. Kohn, supra,* —— U.S. at ——, 102 S.Ct. at 2773, quoting *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 353, 95 S.Ct. at 455.

The performance of a function which serves the public or which is "affected with a public interest" does not suffice under this test. *Rendell-Baker v. Kohn, supra,* —— U.S. at ——, 102 S.Ct. at 2771; *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 353–54, 95 S.Ct. at 455. Rather, the activity must be one which is traditionally associated with sovereignty. *Id.* 419 U.S. at 353, 95 S.Ct. at 454.

██ Plaintiff has offered no facts which would establish the existence of federal ac-

tion under the public function test. Thus, there are no facts to support the proposition that the provision of hospital or medical services has traditionally been within the exclusive province of the federal government.

That Defendants' services may further government policies does nothing more than clothe their activities "with a public use." *See Jackson v. Metropolitan Edison Co., supra* at 353–54, 95 S.Ct. at 455. Hence, Defendants' activities are not the exercise of powers which have traditionally been exercised exclusively by the government. *Cf. Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 573 (1966) (Control and maintenance of a public park).

Plaintiff has failed to establish a "federal action" under any of the tests discussed above. Consequently, Plaintiff is unable to prove that Defendants have violated rights secured by the Fifth Amendment.

### II. CLAIM UNDER 42 U.S.C. § 1983

Defendants contend that Plaintiff's allegations cannot establish that Defendants' conduct was action under the color of state law within the meaning of 42 U.S.C. § 1983.[61]

██ Plaintiff asserts that the Defendants did act under color of state law within the meaning of § 1983.[62]

---

**60.** The relevant federal regulations do not dictate the Hospital's decision to refuse to process any particular physician's application.

We note further that there are no allegations connecting the federal government with the action of any individual Hospital Defendant.

**61.** Dr. Muller contends that Plaintiff has failed to state a claim under § 1983. The Hospital Defendants contend in their Motion that this Court lacks subject matter jurisdiction under § 1983. The substance of their contentions are the same, namely, that they did not act under color of state law. We note, however, that this issue is relevant to the question of whether Plaintiff has stated a claim rather than the threshold question of subject matter jurisdiction. *See Nguyen v. United States Catholic Conference, supra* at 1339–40 (the question of federal action is not relevant to the issue of subject matter jurisdiction). Under the pertinent case law, it is clear that we have subject matter jurisdiction. *See Duke Power Co. v.*

*Carolina Env. Study Group,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978); *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Griffith v. Bell-Whitley Community Action Agency,* 614 F.2d 1102, 1107 (6th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980).

**62.** Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall

We do not reach the issue of whether the Hospital's activities constitute "state" action for purpose of § 1983 and the Fourteenth Amendment [63] because that issue has already been decided by the Pennsylvania Superior Court.[64]

Both the Hospital Defendants and Dr. Muller, as a threshold matter, assert the defense of collateral estoppel with respect to this issue.[65] We agree that the doctrine of collateral estoppel is applicable here but only with respect to the issue of whether the Hospital's activities, absent any conspiratorial conduct on the part of a state actor, constitute state action.

■■■ The purpose of collateral estoppel is to prevent the waste of judicial and individual resources, minimize the occurrence of inconsistent decisions and encourage reliance upon judicial decisions. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Under this doctrine, a court's decision on an issue of fact or of law which is necessary to its judgment is conclusive with respect to that issue in subsequent suits based upon a different cause of action involving a party to the first case. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

■■■ The federal courts have consistently applied collateral estoppel to issues decided by state courts. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Further, it is now firmly established that the doctrine of collateral estoppel is applicable to § 1983 actions. *See Allen v. McCurry, supra* (where the Supreme Court held that the doctrine of collateral estoppel could be applied in a § 1983 action in federal court with regard to issues decided in a state criminal proceeding).

■■ Thus, the doctrine of collateral estoppel will apply when (1) the issue decided in the prior litigation is identical to the issue here, (2) the prior litigation resulted in a final judgment on the merits, (3) the party against whom the estoppel is asserted is a party, or in privity with a party, to the prior proceeding, and (4) the opportunity to present the claim in the prior proceeding was full and fair. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 844 (3d Cir. 1974).

In this case, the question of whether state action exists with respect to Indiana Hospital [66] is identical to the issue decided in the state court proceeding. The state court litigation resulted in a final decision on the merits. The Plaintiff here was a party to the prior litigation. Further, there is absolutely no indication that Plaintiff was denied a full and fair opportunity—procedurally or substantively—to present his case before the Pennsylvania courts.[67] *See id.* at 845.

---

be considered to be a statute of the District of Columbia.
42 U.S.C. § 1983.

**63.** *See Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), quoting *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) ("In cases under § 1983, under color of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.") We note, however, that under *Lugar,* all conduct that satisfies the state action requirement of the Fourteenth Amendment satisfies the § 1983 requirement of action under color of state law but the converse is not necessarily true. The courts which have decided medical staff privilege cases similar to the one at bar have consistently, in that context, equated "action under color of state law" with "state action." *See, e.g., Cardio-Medical Assoc. v. Crozer-Chester Medical Center, supra* at 1087–97 and the cases cited therein.

**64.** *See* n. 46 *infra.*

**65.** The Hospital Defendants asserted this defense in their Answer (para. 20) to Plaintiff's Complaint. Dr. Muller raised this defense in his Motion to Dismiss (para. 5(a)).

**66.** We are referring here to the Hospital's general activities rather than any particular action performed in concert with a "state actor."

**67.** Thus, Plaintiff had a full and fair opportunity in the state courts to make the same allegations he makes here on the state action issue, and to present evidence thereon. Moreover, we note that the possibility of error in the state court's decision does not preclude the applica-

We decline to apply collateral estoppel to the alleged conspiracy between Dr. Muller of the Pennsylvania Department of Health and the Hospital Defendants because that issue was not present before the Pennsylvania courts.[68]

Plaintiff contends that the facts he alleges support a finding that a conspiracy existed between Dr. Muller and the Hospital Defendants so that we may conclude that all Defendants acted under color of state law.[69] We disagree.

A conspiracy between a private party and a state official to effect a prohibited act may constitute action under color of state law for purposes of § 1983. *Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Mere acquiescence in a private action, however, does not convert the action into that of the state. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164–66, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978).

We believe that the Plaintiff in this case, like those in *Flagg Bros.,* is not complaining "that the State *has* acted, but that it has *refused* to act (emphasis in original)." *Id.* at 166, 98 S.Ct. at 1738. Such a contention does not provide a basis for finding action under color of state law for purposes of § 1983.

In the instant case, the Pennsylvania Department of Health did not become involved until *after* the Hospital Defendants had already taken their disputed action. Specifically, Plaintiff requested and was denied application forms from the Hospital in October of 1980. The earliest date of involvement by the Department was December of 1980. Thus, the Department could not have conspired with the Hospital Defendants at the time of the conduct in question. Any alleged conspiracy could only have arisen after the Hospital had refused to provide Plaintiff with the application forms.

Further, the Department of Health only became involved at *Plaintiff's* request. The Department's involvement was not at its own initiative or at the Hospital's request. This is a factor which would tend to negate any alleged concerted action between the Hospital Defendants and the Department of Health.

Most importantly, the Department of Health simply refused to take any action in the matter. It would not order the Hospital to provide Plaintiff with an application. It is the Department's refusal to take any action which Plaintiff actually contests.

Thus, it cannot be said here that the Commonwealth of Pennsylvania compelled a specific act by a private party or "commanded a particular result." *Adickes v. Kress & Co., supra* 398 U.S. at 170, 90 S.Ct. at 1615; *Peterson v. Greenville,* 373 U.S. 244, 248, 83 S.Ct. 1119, 1121, 10 L.Ed.2d 323 (1963). Certainly, there is no allegation that the Department of Health *ordered* the Hospital to withhold an application from Plaintiff. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974).

---

tion of collateral estoppel as long as the party against whom it is asserted had a full and fair opportunity to present his or her claim.

**68.** The state court litigation terminated before the Pennsylvania Department of Health ever became involved in this matter in December 1980. Based upon the relevant dates and Plaintiff's own allegations, the alleged conspiracy could only exist, if at all, with respect to Plaintiff's application for 1981 staff privileges and not with regard to any prior applications.

**69.** In his brief, Plaintiff contends that a conspiracy also exists between the private Hospital Defendants and William McMillen and that this conspiracy is sufficient for action taken under color of state law for purposes of § 1983. Plaintiff's contention is without merit. William McMillen, a member of the Hospital's governing Board is or was an Indiana County Commissioner. Mr. McMillen cannot fairly be said to be a state "actor" for purposes of Plaintiff's alleged wrong. Thus, Mr. McMillen is not a state official. *See Lugar v. Edmondson Oil Co., supra.* Further, his actions as a member of the Hospital's Governing Board were not made for the purpose of executing government policy or in the performance of his official county duties. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The state's inaction in this case cannot be characterized as "coercion" or even "significant encouragement." *See Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). At best, it is mere acquiescence in the Hospital's decision. *See id.*

Therefore, the facts as alleged by Plaintiff, even if fully proven, do not provide a basis for holding the Commonwealth of Pennsylvania responsible for the Hospital's act and do not enable us to find that the Hospital's conduct was action under color of state law for purposes of § 1983.

Accordingly, Defendants' Motions with respect to Plaintiff's claim under § 1983 must be granted.

### III. CLAIM UNDER 42 U.S.C. § 1985

The Hospital Defendants and Dr. Muller contend that Plaintiff has failed to state a claim under 42 U.S.C. § 1985 because he has not alleged any facts showing the existence of class-based animus.

Plaintiff responds that an "animus" test is not required by the terms of either § 1985(2) or (3). He also asserts that class-based animus need not be shown where state action is involved.

Section 1985 contains three major subsections, each providing for the redress of somewhat different wrongs. Plaintiff does not make clear under which subsection(s) he is proceeding. His Complaint alleges a violation of § 1985 without identifying a particular subsection or subsections. His brief primarily discusses § 1985(3) although a fleeting reference is also made to § 1985(2).

Clearly, § 1985(1) [70] is inapplicable to the instant case. That subsection only protects federal officers. *Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 717–718 (9th Cir.), *cert. denied,* 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981); *McIntosh v. Garofalo,* 367 F.Supp. 501, 505 n. 1 (W.D.Pa.1973). Specifically, it proscribes conspiracies which interfere with the performance of official duties by federal officers. *Kush v. Rutledge,* —— U.S. ——, ——, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). This subsection does not apply to private individuals or even to non-federal officials. *Canlis, supra.*

Further, Plaintiff does not state a claim under § 1985(2).[71] Section 1985(2) subdivides into two parts—that which precedes the semicolon and that which follows it. *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

**70.** Section 1985(1) states:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.... (the party so injured or deprived may have an action for ... damages ...). 42 U.S.C. § 1985(1).

**71.** Section 1985(2) states:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ... (the party so injured or deprived may have an action for ... damages ...). 42 U.S.C. § 1985(2).

The first part of § 1985(2) addresses conspiracies to intimidate or retaliate against parties, jurors or witnesses in federal court proceedings. *Id. See also Kush v. Rutledge, supra.* Plaintiff does not allege that Defendants conspired to interfere with a federal court proceeding. *See Hahn v. Sargent, supra,* at 469.

The second part of § 1985(2) parallels the first part of § 1985(3) inasmuch as both are directed towards "equal protection of the laws." *Id.* A requisite element to a cause of action under the first part of § 1985(3) is a showing of "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *See also Kush v. Rutledge, supra.* The U.S. Court of Appeals for the Third Circuit has applied this requirement to the second portion of § 1985(2) as well. *Brawer v. Horowitz, supra* at 840. *See also Kush v. Rutledge, supra; Hahn v. Sargent, supra* at 469. For reasons discussed in connection with § 1985(3) (see below), Plaintiff's allegations will not support an inference that class-based animus exists here. Therefore, Plaintiff fails to state a claim under the second part of § 1985(2).

Section 1985(3)[72] was previously thought to apply only to actions taken under color of state law. *See Collins v. Hardyman,* 341 U.S. 651, 655, 71 S.Ct. 937, 938, 95 L.Ed. 1253 (1951). In the landmark case of *Griffin v. Breckenridge, supra,* the Supreme Court held that § 1985(3) provides a cause of action for damages caused by purely private conspiracies. *Id. See also Kush v. Rutledge, supra; Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 371–72, 99 S.Ct. 2345, 2348–49, 60 L.Ed.2d 957 (1979). The Court, however, in order to avoid constitutional difficulties which would have arisen had § 1985(3) been interpreted as a general federal tort law, concluded that the language of the provision which requires an intent "to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action (emphasis in original)." *Griffin v. Breckenridge, supra* 403 U.S. at 102, 91 S.Ct. at 1798. The Court was quite clear that this invidiously discriminatory motivation is a required element of a cause of action under § 1985(3).[73]

The U.S. Supreme Court recently clarified in *Kush v. Rutledge, supra,* that the requirement of class-based animus applies only to the first part of § 1985(3). The second part of § 1985(3) proscribes conspiracies that interfere with federal elections. Plaintiff does not allege that Defendants conspired to interfere with a federal election.

Given the above cases, Plaintiff's contentions that class-based animus is not required under the second part of § 1985(2)

**72.** Section 1985(3) states:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or his property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3).

**73.** The "intent" which § 1985(3) requires is not scienter or willfulness but rather is an invidiously discriminatory motivation. *Id.* at 102 n. 10, 91 S.Ct. at 1798 n. 10.

or under the first part of § 1985(3), or, alternatively, need not be shown in this particular case, are without merit.

■ Moreover, even a most liberal reading of the Complaint in this case will not support an inference of class-based animus.

In paragraph 39 of his Complaint, Plaintiff alleges that he "is a member of the class of persons that the Acts of Congress intends to protect" without identifying that class.[74] Plaintiff does not allege that he was discriminated against because of his race or even because of his sex. *See Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118, 1133 (W.D.Pa.1980). Plaintiff does allege, in paragraph 35, that "(p)hysicians similarly qualified and situated as is plaintiff have been granted renewal of medical staff privileges at the defendant Hospital in the years 1978 through 1981 and they thereby have an opportunity superior to the plaintiff's for the practice of their profession." Perhaps, based upon this language, Plaintiff purports to belong to a class of physicians.

Animus against physicians is not based upon "immutable characteristics" for which the members of the class have no responsibility. *See Carchman v. Korman Corp.,* 594 F.2d 354, 356 (3d Cir.), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). Nor are physicians a group which otherwise requires and warrants special federal assistance in protecting their civil rights. *See Canlis v. San Joaquin Sheriff's Posse Comitatus, supra* at 720.

Hence, we cannot find that Plaintiff is a member of a class protected under the first portion of § 1985(3).[75] *See Feldman v. Jackson Memorial Hospital,* 509 F.Supp. 815, 823–24 (S.D.Fla.1981) (Podiatrists are not members of a class protected under

§ 1985(3)). *See also Jackson v. Norton-Children's Hospital, Inc.,* 487 F.2d 502, 503 (6th Cir.1973), *cert. denied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974), *rehearing denied,* 417 U.S. 978, 94 S.Ct. 3189, 41 L.Ed.2d 1149 (1974) (No class-based animus in a suit by a discharged physician against a hospital); *Ward v. St. Anthony Hospital,* 476 F.2d 671, 676 (10th Cir.1973) (No class-based animus in a physician's suit against a hospital).

Since Plaintiff's allegations will not support an inference that Defendants' actions were motivated by class-based animus, Defendants' Motions with respect to Plaintiff's § 1985 claim must be granted.

## IV. CLAIM UNDER THE FEDERAL ANTITRUST LAWS

The Hospital Defendants[76] contend that this Court lacks subject matter jurisdiction over the federal antitrust claim because Plaintiff does not adequately allege the requisite effects on interstate commerce. Specifically, according to the Hospital Defendants, Plaintiff's allegations fail to show that Defendants' allegedly illegal activities have a substantial and adverse effect on Plaintiff's activities in interstate commerce. Defendants maintain that the focus of the jurisdictional inquiry is upon the *Plaintiff's* activities.

Plaintiff responds that the relevant inquiry for purposes of federal antitrust jurisdiction focuses upon *Defendants'* activities. Plaintiff contends in this regard that the jurisdictional requirements are satisfied in this case because the activities of the Hospital Defendants are in interstate commerce or have a substantial effect on interstate commerce.

---

**74.** We note in this regard that a bald assertion such as this may not meet the factual specificity required of civil rights claims in this Circuit. *See United States v. City of Philadelphia,* 644 F.2d 187, 204–05 (3d Cir.1980); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir.1976).

**75.** Nor is Plaintiff a member of a class protected under the second portion of § 1985(2).

**76.** Defendant Dr. Muller also moves to dismiss the antitrust counts of the Complaint. As discussed earlier, however, it appears from the Complaint and the amendments thereto that Plaintiff did not include Dr. Muller in the antitrust counts. Therefore, we will address the antitrust allegations only with respect to the Hospital Defendants.

One of the prerequisites to a cause of action under the Sherman Act[77] "is the existence of a demonstrable nexus between the defendants' activity and interstate commerce." *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). It is unnecessary for the activity to be *in* the flow of interstate commerce.[78] Rather, it is well established that the Sherman Act also extends to activities which, though local in nature, have a substantial effect on interstate commerce. *Id.* at 241–42, 100 S.Ct. at 509; *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 194–95, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974).

The United States Supreme Court discussed the "effect on commerce" test or theory in *McLain, supra.* In that case, the Court stated:

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful. The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect. This is not the rule of our cases. *See American Tobacco Co. v. United States,* 328 U.S. 781, 811 [66 S.Ct. 1125, 1139, 90 L.Ed. 1575] (1946); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 225, n. 59 [60 S.Ct. 811, 846 n. 59, 84 L.Ed. 1129] (1940). A violation may still be found in such circumstances because in a civil action under the Sherman Act, liability may be established by proof of *either* an unlawful purpose or an anticompetitive effect. *United States v. United Gypsum Co.,* 438 U.S. 422, 436, n. 13 [98 S.Ct. 2864, 2873, n. 13, 57 L.Ed.2d 854] (1978); *United States v. Container Corp.,* 393 U.S. 333, 337 [89 S.Ct. 510, 512, 21 L.Ed.2d 526] (1969); *United States v. National Assn. of Real Estate Boards,* 339 U.S. 485, 489 [70 S.Ct. 711, 714, 94 L.Ed. 1007] (1950); *United States v. Socony-Vacuum Oil Co., supra,* [310 U.S.] at 224–225, n. 59 [60 S.Ct. at 845–46, n. 59] (emphasis in original).

444 U.S. at 242–43, 100 S.Ct. at 509.[79]

Subsequent lower court opinions have disagreed over the meaning of the crucial language in *McLain.* Some courts have held that *McLain* simply emphasizes that a Plaintiff does not have to prove that the Defendant's allegedly unlawful activities *actually* affected interstate commerce; Plaintiff must still show, however, that Defendant's allegedly unlawful conduct *probably* has a substantial effect on interstate commerce. *See, e.g., Cordova v. Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank,* 649 F.2d 36, 44–45 (1st Cir.1981); *Pao v. Holy Redeemer Hosp.,* 547 F.Supp. 484

---

**77.** Section one of the Sherman Act prohibits every contract, combination or conspiracy "in restraint of trade or commerce among the several States" and section two of the Sherman Act prohibits monopolizing "any part of the trade or commerce among the several States." 15 U.S.C. §§ 1 and 2.

**78.** For an activity to be in the flow of interstate commerce, it must be an integral and inseparable part of an interstate transaction or program. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 784–85, 95 S.Ct. 2004, 2011–12, 44 L.Ed.2d 572 (1975); *United States v. Frankfort Distilleries,* 324 U.S. 293, 297, 65 S.Ct. 661, 663, 89

L.Ed. 951 (1945). Plaintiff's allegations do not permit an inference that Defendants' activities are an integral and inseparable part of an interstate transaction or program. On the contrary, the pleadings indicate that the activities of the Hospital Defendants are local in nature. Therefore, jurisdiction in this case will be analyzed under the "effect on commerce" theory. 444 U.S. at 242, 100 S.Ct. at 509.

**79.** We quote the Court's exact words at length because of the confusion and disagreement they have created among the lower courts.

(E.D.Pa.1982). Other courts, however, have found that the language in *McLain* permits a Plaintiff to satisfy the jurisdictional requirement if it can be shown that the Defendant's general business activities, as opposed to, or independent of, the allegedly illegal conduct, substantially affect interstate commerce. *See, e.g., Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 818–19 (9th Cir.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982); *Robinson v. Magovern,* 521 F.Supp. 842, 876–77 (W.D.Pa.1981), *aff'd mem.,* 688 F.2d 824 (3d Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).[80]

■ We think it quite clear that the Court in *McLain* focused upon the Defendants' general business activities for its jurisdictional inquiry rather than the specific conduct alleged to be unlawful. *Accord, Western Waste Service v. Universal Waste Control,* 616 F.2d 1094, 1096–97 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980); *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 727–28 (10th Cir.1981) (Holloway, J., concurring and dissenting); *McElhinney v. Medical Protective Co.,* 549 F.Supp. 121, 127–28 (E.D.Ky.1982); *Feldman v. Jackson Memorial Hosp.,* 509 F.Supp. 815, 820–21 (S.D.Fla. 1981). *But cf. Crane v. Intermountain Health Care, Inc., supra* at 719–27 (*en banc*) (Plaintiff must allege a nexus between interstate commerce and the challenged activity); *Cardio-Medical Assoc. v. Crozer-Chester Medical Center,* 536 F.Supp. 1065 (E.D.Pa.1982) (The focus is on the effect of *Plaintiff's* activities on interstate commerce). We do not believe that the Court's pronouncements in *McLain* should be interpreted otherwise, notwithstanding the possible expansion of Sherman Act jurisdiction as it had existed under prior cases.[81]

■ In light of the above, the threshold issue under Plaintiff's federal antitrust claim is whether the Hospital Defendants' activities have a substantial effect on interstate commerce.[82]

Plaintiff's factual allegations as to interstate commerce are set forth in paragraph 43 of his Complaint. That paragraph states in pertinent part:

Both the plaintiff physician and the defendant Hospital ... treat patients who are citizens of various states. Their medical supplies are purchased and delivered to them from states outside of Pennsylvania. A large part of their income is derived from sources outside of Pennsylvania, namely, federal Medicare and Medicaid. The defendant Hospital also receives federal grants-in-aid.

■ We have no specific information before us concerning the Hospital's out-of-state patients and medical supplies. For example, we do not know how many or what percentage of Defendants' patients are out-of-state residents or domiciliaries. We believe that such information is highly pertinent to our determination of the jurisdictional issue. We will therefore require information which is more detailed and specific before we make our determination.

■ Plaintiff does elaborate on the other items included in paragraph 43. In paragraph 21 of his Complaint, he alleges that 35% of the Hospital's annual income is from Medicare funds, applicable to 44.62% of its inpatient load. Compl. para. 21(d). Medicaid funds allegedly represent 6.5% of the Hospital's annual income. Compl. para. 21(e). The Hospital has also received federal grants-in-aid totalling $2,200,000.00.

**80.** *But see Pontius v. Children's Hosp.,* 552 F.Supp. 1352, 1361 (W.D.Pa.1982).

**81.** Where the Court's words are clear, we feel compelled to follow their plain meaning.

**82.** The cases involving medical staff privileges have not distinguished between individual and collective impact on interstate commerce. In other words, the cases have not required a Plaintiff to show that the activities of each individual hospital Defendant have a substantial effect on interstate commerce. *See, e.g., McElhinney v. Medical Protective Co., supra* at 128. Since the cases thus far have not made a distinction among hospital Defendants for purposes of jurisdiction and since a requirement of individual impact would impose a substantial burden on a physician-Plaintiff, we will not impose such a requirement in this case.

Compl. para. 21(f).[83] These facts alone, however, are insufficient to show that the Defendants' activities have a substantial impact on interstate commerce.

Furthermore, the allegations set forth in paragraph 44 of the Complaint [84] are wholly insufficient, either alone or in conjunction with Plaintiff's other allegations, to sustain Sherman Act jurisdiction.

We may well have Sherman Act jurisdiction in light of the Supreme Court's decision in *McLain.* Since further facts of greater specificity are needed, we will require the parties to submit affidavits on this issue. Since Plaintiff may lack knowledge as to some of the jurisdictional facts, he shall be given the opportunity to conduct discovery on this issue.[85]

### CLAIM UNDER THE STATE ANTITRUST LAWS

There is no need to address the substance of Plaintiff's state antitrust claim at this juncture. This claim remains in the Complaint unless or until the federal claims are entirely resolved prior to trial. In the event the federal claims are dismissed prior to trial, the state antitrust claim, as well as any other claims predicated upon pendent jurisdiction, may also be dismissed. *See Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976).

---

**83.** In paragraph 21(i), Plaintiff alleges that the Hospital has received, as of June 30, 1980, $2,507,857.65 from "public subscriptions." Plaintiff does not state the nature or source of these "public subscriptions." Therefore, we have no indication as to whether this allegation should be considered a fact in support of Sherman Act jurisdiction. If it is a supporting fact, Plaintiff should so indicate.

**84.** Paragraph 44 states in pertinent part:
 The Hospital is a link in a chain of health care facilities that binds all fifty states, the District of Columbia and territories of the United States, and its relationship with the other health care facilities transcends state lines in that the Federal government acting through the state, District and territorial governments as agents, regulates and controls all facets of operation in such a manner that the operation of any one link has a substantial effect upon all others and thus a substantial effect upon interstate commerce. Inasmuch as the medical staff members, individually and jointly, are essential to the operation of a health care facility they have a substantial effect upon interstate commerce.

**85.** Defendants' allegation that Plaintiff has failed to state a claim under the federal antitrust laws will not be addressed at this time. In the event Plaintiff does establish Sherman Act jurisdiction, Defendants will be allowed to renew any other objections to the federal antitrust claim in an appropriate manner.